J. N. HARSHAW and J. C. HALLYBURTON, Executors of JACOB HARSHAW *v.* W. F. McKESSON and N. W. WOODFIN.

An agent acting under a parol authority, cannot bind his principal by any covenants, and when the principal never delivered them, they cannot be regarded as his *deeds.*

Where A is indebted to B by note, and the latter gives to the former a mortgage to secure the payment of the note, there is an implied promise on the part of B, that by the acceptance of said mortgage, he will suspend action upon the said note.

Civil action tried before *Mitchell, J.,* at Spring Term, 1871, of BURKE Superior Court.

The plaintiffs declared upon a single bill executed by the defendants and payable to the plaintiffs' testator, for thirty-one hundred and sixty-four dollars and seven cents, principal money.

The defendants in their answer admit the execution of the single bill, but say they executed to plaintiffs' testator mortgage deeds, conveying large tracts of lands in Burke, Buncombe and adjoining counties, to secure this and other debts due decedent. That at the time of the execution and delivery of said mortgage deeds, and as a part of the same transaction, the plaintiffs' testator, by his lawfully authorized agent, executed and delivered to them, covenants, whereby he obligated himself to give them indulgence for three, four and five years, one-third of said debt to be paid at the expiration of each period, and that this action is brought within and before the expiration of the time these defendants were to be indulged.

That the said covenants are a bar to this action.

The defendants introduced the mortgages and covenants. McKesson, one of the defendants, testified the covenants were given to him at the time of the delivery of the mortgages, and that the whole transaction of signing, sealing, and delivering the mortgages and covenants, and that J. N. Harshaw, son of

decedent, represented himself as fully authorized by his father to do and perform all business connected with these debts and mortgages.

J. N. Harshaw and J. C. Halyburton, the plaintiffs, testified that the mortgages and covenants were delivered about the same time on the same day, but could not say which were delivered first. They expressly denied any power or authority from their testator, Jacob Harshaw, to do anything more than receive the mortgages, and have them proven and registered.

The defendants' counsel requested his Honor to charge the jury:

1st. If J. N. Harshaw had authority under seal to execute the covenant, relied on as a defence, the plaintiffs are not entitled to recover in this action.

2d. Whether he had authority under seal or not to execute said covenant, if the said covenants and mortgage deeds were delivered for, and by, J. N. Harshaw, for his father, at the same time, and as parts of one entire transaction, the plaintiffs could not recover in this action.

His Honor gave the first instruction, and substantially the second, adding, however, "But if J. N. Harshaw was the agent of his father to receive for him the mortgage deed of defendants only, and had no authority in writing, or in other form, to bind him to any agreement, such as the paper writing, purporting to be a covenant, purporting to be signed and sealed as agent of his father, said alleged covenant would not avail as a defence, and the authority to accept a deed for his father, would not be ground to imply he had authority by such paper writing or alleged covenants.

Verdict and judgment for plaintiffs. Appeal by defendants.

*Battle & Sons*, for plaintiffs.
*Rogers & Batchelor*, for defendants.

RODMAN, J. This action was brought on a bond made by
22

defendants to the testator of plaintiffs, on 25th December, 1860, payable one day after date. The defence is that the testator in 1867, accepted deeds by which defendants severally conveyed to him certain lands, with conditions to be void, if the several grantors should pay certain described debts, (of which this bond was one) one third in three years, one other third in four years, and the rest in five years; and thereby promised to suspend action on the bond until the conditions were broken.

All the facts which we consider material are admitted, or not denied. The mortgages were executed as pleaded. The testator was not personally present when they were delivered; but he had given to the present plaintiffs by parol, authority to accept the mortgages. At the same time at which the mortgages were delivered, J. N. Harshaw, one of the plaintiffs, executed covenants under seal, in the name of the testator, referring to the mortgages, and agreeing that no suit should be brought before the expiration of the periods mentioned in them. But he had no authority under seal from the testator, and he swore that he had no authority to do any thing more than receive delivery of the mortgages. The supposed covenants must therefore be put out of the case.

The defendants in substance requested the Judge to instruct the jury, that whether J. N. Harshaw had authority under seal or not, to execute the covenants, if the mortgages were accepted and the covenants executed by him for the testator, the plaintiffs were not entitled to recover. The Judge gave the instruction with this addition : " But if J. N. Harshaw was the agent of his father (the testator) to receive for him the mortgage deeds of the defendants only, and had no authority in writing or in other form to bind him to any agreement, such as the paper writing purporting to be a covenant, purporting to be signed and sealed, as agent of his father, said alleged covenant would not avail as a defence, and the authority to accept a deed for his father, would not be ground to imply he had authority by such paper writing or alleged covenant."

The jury found for the plaintiffs, and the defendants appealed.

The instructions asked of the Judge, and those given by him, enable the defendants to raise two questions :

1. Putting the supposed covenants out of view, was there implied from the acceptance of the mortgages, a contract on the part of the testator to delay suit for the periods therein specified ?

2d. Was such an implied parol contract valid to suspend the right of action on the bond now sued on ?

Inasmuch as the learned counsel who argued this case, directed most of their attention to other questions, perhaps some observations are needed to show that these are the propositions on which the case must necessarily turn. On the one hand it is clear that as J. N. Harshaw had no power under seal to execute the alleged covenants, and as the testator never delivered them, they cannot possibly be regarded as his *deeds*. At the utmost they amount merely to a *parol* agreement on his part to suspend suit. So that any discussion of the effect of a *covenant* not to sue, is out of place.

On the other hand, it is admitted in the pleadings that the plaintiffs had authority to accept the particular mortgages with their provisions. As to what is said further in the plaintiffs' replication, that *after the delivery* of the mortgage by Woodfin, the testator entrusted it to him to have registered, and that he neglected to have it done for five months, and until prior liens had been acquired on the mortgaged property, by strangers; there is no evidence of the fact at all. It is pleaded by the plaintiff, but surely it cannot need to be said, that the pleading of a party, although evidence against him of the highest character, is no evidence for him. And even if the fact had been proved, although it might have been ground for an action against Woodfin for negligence, it could not have defeated the effect of the acceptance of the mortgage by the testator. Moreover, if it had been proved, there is no allegation of the kind in reference to the mortgage from McKesson, which would still re-

main as a sufficient consideration to support the promise of the testator, if any was implied. This, therefore, must be put out of view. Putting aside these irrelevant matters, nothing remains but the two questions stated, which do legitimately and necessarily arise upon the facts, and upon the instructions of the Judge.

Upon the first of these questions, we have had no difficulty. The grantors could have had no consideration for making the mortgage *in its terms,* but an agreement on the part of the testator to suspend suit. The testator also received a valuable consideration for his agreement in the additional security for his debt. The authorities for this view of the case, (considered as distinct from the proposition involved in the second question) are abundant. For example, if the holder of a bill of exchange past due, take from the maker another bill on time, for the amount of the first; it is an accord and satisfaction of the first. *Kendrick* v. *Lomax,* 2 Cromp. & J. 405 ; 2 Pars. Cont. 684. This is because, in taking the second bill, there was an implied promise to suspend suit on the first. See also, to the same effect *Maillord* v. *Duke of Argyle,* 6 M. & G. 40, (46 E. C. L. R.) *Baker* v. *Walker,* 14 M. &. W. 465. *Putman* v. *Lewis,* 8 John, 389. *Fishie* v. *Larned,* 21 Wend. 452. *Myers* v. *Welles,* 5 Hill 463, 1 Smith L. C. American note to *Cumber* v *Wane,* p. 456–'57.

Parsons further says, (p. 685): "Nor is it necessary that the accord and satisfaction should go so far as to extinguish the original claim. If there be a new agreement resting on sufficient consideration and otherwise valid, to suspend a previous claim or cause of action, until the doing of a certain thing or the happening of a specified event, an action cannot be maintained on that claim in the meantime."

Mr. Parsons adds : "But such agreement to suspend or delay, will not be inferred from the mere giving of collateral security with power to sell the same at a certain time if the debt be not paid."

We have examined the case of *Emes* v. *Widdawson*, 4 C. & P. 151, to which he refers as authority for this last observation, and the collateral security differs from this in its terms, so materially, as to make the case not applicable.

In this case we think it is a necessary implication from the conditions of the mortgage, that the mortgagee agreed to suspend suit on the bond.

On the second question we have had more difficulty.

If the bond which was the subject of the parol agreement to suspend suit, had been not a bond, but a writing only, the authorities cited would leave no doubt that the agreement was valid. The difficulty arises from the maxim thus stated in Blake's case, 6 Co. 43. *Nihil tam conveniens est naturali equitati quam unumquordque depolio eo ligamine quo ligatum est.*

This maxim cannot truly claim to be founded in natural equity. There is nothing contrary to equity in permitting a contract to be dissolved or altered, in any way. Reasons of policy or convenience may require the release or change to be evidenced in a particular manner to prevent surprise or fraud, or to furnish clear proof of the fact. But any law which requires a particular ceremony, such as attaching a seal, is purely arbitrary, and no more necessary to natural equity than the rule requiring two witnesses to a will. This is sufficiently clear from the consideration that the maxim is peculiar to the English and unknown to the jurisprudence of other nations. This maxim has long since ceased to be maintained in its integrity, if indeed it ever was. A judgment of record may be discharged by a release under seal. *Barker* v. *St. Quintin*, 12 M. & W. 453. It is settled upon the authorities that a specialty cannot be discharged by any thing less than a specialty *before breach.* Broom Leg. Max. 846–'7, and *Cope* v. *Jameison*, 10 Ire. 193. And in Blake's case *ubi. sup.* it is said that when a duty accrues by the deed in certainty, as by covenant, bill or

bond, to pay a sum of money, it must be avoided by matter of
as high a nature.

But in *Neal* v. *Sheaffield*, Cro. James 254, a distinction was
taken, which left this doctrine only a barren technicality, viz :.
that a plea of satisfaction, though bad if pleaded to the *bond*,
was good, if pleaded as a satisfaction of *the sum* due by the
bond.   In the United States this distinction has been looked
on as touching the form only, and the supposed rule has been
substantially disregarded; *Strong* v. *Holmes*, 7 Cow. 225;.
*State* v. *Cordon*, 8 Ire. 179.   This present view of the law in
. England is stated in a note of Sergeant Manning to *May* v..
*Taylor*, 6 M. & G. 262, (46 E. C. L. R. 259,) as follows :

" The distinction appears to be this : there can be no *dispen-
sation* with a contract under seal, except by a release under
seal.   Accord and satisfaction *before breach* is therefore a bad
plea in covenant, because it amounts to a dispensation.   But
accord and satisfaction *after breach* is a good plea, because the
subject matter of the payment and acceptance in satisfaction is.
not the covenant which still remains entire, but the damages.
sustained by the particular breach of it for which the action
is brought."

There is little use in holding on to a rule, after it has been
reduced to such a shadow.

There is also a class of cases, arising out of arrangements.
made by a debtor with his creditors for a discharge of their
debts on a partial payment, where the agreement is enforced
and the creditor prevented from suing until a failure by the
debtor to perform the condition, on the ground that his doing
so would be a fraud . upon the other creditors who had been
induced to join with him in the agreement.   *Good* v. *Chese-
man*, 2 B. and Ald. 328, (22 E. C. L. R.), certainly it could
never be held in such a case, that a creditor by bond, would
stand on any different footing from one by writing only.   In
this case, the mortgages by McKesson and Woodfin, were each
inducements for the other.

In all these cases, if the matter can be pleaded as satisfaction, it must be equally good when pleaded only in suspension of the action.

In fact it may fairly be doubted, whether the strict rules applicable to bonds before they were made negotiable, continued to be so, after they became, as they have with us, a common form of commercial paper.

We think that the defendants were entitled to the instructions asked for ; and that his Honor erred, in saying that there was no promise to suspend action, implied by the acceptance of the mortgages. We think such a promise was implied, and that the acceptance of the mortgages suspended the right of action.

PER CURIAM.                                    *Venire de novo.*