## William Deering & Co. v. Warren.

1.  No writ of attachment should issue without an affidavit containing one or more of the prescribed requisites, as set forth in the statute regulating attachment.

2.  The affidavit is fundamental, and is the foundation for the jurisdiction of the court in attachment proceedings.   It is the affidavit which brings the power of the court into action, and it is always the defendant's right, and it may become that of others, to question its sufficiency to confer jurisdiction in any particular case.

3.  After a writ of attachment has been issued, there are two grounds upon which it may be dissolved:   One is when the facts alleged upon which the writ was issued are untrue; the other is when some of the requirements of the statute have not been fulfilled,   There are also two distinct modes of procedure.   One, by traverse of the facts alleged in the affidavit; the other, by motion to vacate or dissolve, because of irregularities.   The former raises the issues of fact, and the latter issues of law.

4.  A creditor holding collateral security for his debt, upon property belonging to the debtor, can maintain an attachment against the same and other property of the debtor.

5.  Sections 4388, 4389, Comp. Laws, have no application when the attach-

ing creditor and the mortgagee are one and the same person. This law was enacted so that a creditor of the mortgagor, other than the mortgagee, might avail himself of the proceeds of property belonging to the·mortgagor, which had a lien upon it, after the person holding the lien had received his pay.

6. In the absence of any statutory provisions for the appointment of agents or attorneys for the purpose, any one authorized by the plaintiff to collect may make the affidavit as one of the incidents of his authority. It is recognized as a means to the end.

7. Attachment will lie upon a debt not due, provided the affidavit contains all the necessary averments required by statute for a debt not due.

(Syllabus by the Court. Submitted April 15, 1890. Opinion filed April 1, 1890.)

Appeal from circuit court, Hughes county; Hon. H. G. FULLER, Judge.

The material facts are stated in the opinion.

*Charles H. Price* and *Titus E. Price,* for appellant.

The fact that a debtor is removing his property from the state for mere temporary purposes only is no ground for attachment.    Warder v. Thrilkield 2 N. W. 1073; Hunter v. Seward, 18 N. W. 58; Steele v. Dodd, 16 N. W. 909.

A party holding security for a debt and seeking to attach the property of the debtor, must allege in the affidavit for attachment that the security has become valueless or insufficient. Porter v. Brooks, 35 Cal. 199; Kinsey v. Wallace, 36 Cal. 463; Wilke v. Cohn, 54 Col. 212.    An attachment cannot issue on a claim not due unless one or more of the causes defined in the statute are alleged in the affidavit.    Patrick v. Montader, 13 Cal. 434; Stacy *et al* v. Stichton, 9 Ia. 399; Doggett, Bassett & Hills Co. v. Bell *et al,* 4 Pac. 292.

*Olin G. Reiniger, E. S. Martin* and *George C. Cooper,* for respondent.    No brief filed.

BENNETT, J.    This appeal is from an order of the circuit court of Hyde county, overruling a motion to dissolve an attachment.    The affidavit for attachment is as follows:    "Olin G. Reiniger, attorney for the plaintiff in the above entitled action, being duly sworn, says that J. G. Warren, the defendant in the above entitled action, is justly indebted to the plaintiff, William Deering & Co., in the sum of one hundred and sixteen ($116)

over and above all discounts and set-offs, which said sum is now due, and that a cause of action exists therefor in favor of said plaintiff, and against said defendant, amounting to the said sum of $116, the grounds of which are as follows: That heretofore, to-wit, on the 13th day of July, 1887, the said defendant, for value received, made, executed, and delivered to the said plaintiff his promissory note, whereby he promised to pay to the said plaintiff, on the first day of November, 1888, the sum of fifty dollars, with interest at the rate of eight per cent per annum from the date thereof, and that at the same time the said defendant made and delivered to the plaintiff his other certain promissory note, whereby he promised to pay said plaintiff the sum of fifty dollars on the 1st day of November, 1889, with interest at the rate eight per cent per annum. That no part of said notes have been paid. That this deponent derives his knowledge of the above facts by the admissions of defendant, and the possession of said notes for collection, and from statement from said plaintiff. That the defendant, J. G. Warren, is about to remove from the county of Hyde, Dakota Territory, where he now resides, with the intention of permanently changing his residence, and that the plaintiff has demanded security for his said claims of defendant, which was refused by defendant. [Signed] OLIN G. REINIGER." Upon this affidavit a writ of attachment was issued July 23, 1889, and levied upon certain property of the defendant and appellant.

On November 25, 1889, appellant moved to dissolve the attachment, based upon the following grounds: *First.* That the allegation in the affidavit for attachment, "that the defendant was about to remove from Hyde county with the intention of permanently changing his residence, is false." *Second.* That at the time plaintiff demanded security for his claim, and at the time the affidavit for attachment was made, and the warrant of attachment was levied, the plaintiff had two chattel mortgages on property of the defendant of sufficient value to pay its claim. *Third.* That it is not alleged in the affidavit for attachment that the security held by the plaintiff for the payment of its claim had become valuless or insufficient to satisfy

said claim. *Fourth.* That a part of the property attached, to-wit, one Deering binder with bundle carrier, No. 11,821, and 20 acres of wheat, is included in two chattel mortgages which were given to secure the payment of plaintiff's claim, and no warrant of attachment could be legally levied upon said property so long as the same was held by such mortgages. *Fifth.* That the affidavit of attachment is not made by plaintiff, and does not show that it is made by any person having authority to make the same, and does not show that it was made by any person having personal knowledge of the facts therein stated. *Sixth.* That the affidavit for attachment does not contain any of the allegations required to be set forth by Section 4995, Comp. Laws. *Seventh.* That the affidavit for attachment shows upon its face that a part of the debt which plaintiff seeks to secure was not due at the time the affidavit was made, and as a matter of fact no part of said debt was due. *Eighth.* That the provisions of the statute relating to the attachment of property before a debt is due have not been complied with, in that the affidavit for attachment contains none of the allegations required by Section 5014 of the Compiled Laws. *Ninth.* That the clause of the statute upon which the affidavit for attachment is based is unconstitutional and inoperative. The motion to dissolve was overruled by the court, and defendant appeals. The assignments of error are substantially the same as made in the motion to dissolve, and need not be set out in full.

The proceeding by attachment is purely statutory,—the creature of the written law. Hence but little assistance can be obtained in discussing this peculiar remedy by looking beyond the statute by which it is authorized. The force and effect of attachment laws can only be tested by the principles of statutory construction. They have no features peculiar to the common law, and are so far derogatory to common rights that an appeal to this remedy is not specially favored by the courts. Attachment amounts to an execution in advance of trial and judgment. Property is taken, under legal process, at the instance of one, without even the claim of title, from the possession of another, whose title is unquestioned. It is in consideration of the harshness

and extraordinary character, as well as the purely statutory authority, of this remedy, that courts have generally been inclined to construe its provisions strictly in favor of those against whom it may be employed.   When, however, an attachment issues, the court or tribunal exercising this jurisdiction is governed by certain rules which affect its powers to hear and determine the issues, which are of general application to this provisional remedy, and by these rules many requirements of the statutes may be construed.   In nearly all of the states and territories an affidavit alleging certain facts is required as authority for issuing the warrant, and whenever this is so no court can proceed to judgment that will affect the property, rights, or credits against which it is directed, unless jurisdiction is obtained by the statement of sufficient grounds for attachment in the affidavit.   There is no more right to issue it without the prescribed affidavit than to issue an execution without a judgment.   Whatever relates to the affidavit is fundamental, and is the foundation for the jurisdiction of the court in attachment proceedings.   It is the affidavit which brings the power of the court into action, and it is always the defendant's right, and it may become that of others, to question the proper exercise of jurisdiction in the particular case through attachment, because of the want of the legal foundation for issuing the writ.   In every affidavit for an attachment there are two distinct parts: One relates to the plaintiff's cause of action, and the amount due from defendant to him;   the other, to facts relied on as grounds for obtaining the writ.   Both, though distinct and separate, are required in order to make the affidavit complete, and to give the court jurisdiction to issue the writ.   After a writ has been issued, there are two grounds upon which it may be dissolved: One is when the facts alleged upon which the writ was issued are untrue; the other is when some of the requirements of the statute have not been fulfilled.   There are also two distinct modes of procedure:   One is by a traverse of the facts alleged in the affidavit as grounds of attachment; and the other by motion to vacate or dissolve, because of irregularities in the procedure.   The former raises the issues of fact, and the latter issues

of law.    When the attachment is met by a denial of the truth of
the allegations in plaintiff's affidavit, an issue is tendered on the
merits of the attachment, and if the alleged grounds upon
which the attaching proceedings are based are found untrue,
the attachment should be dissolved, and the property attached
relieved from the lien.    Irregularities are generally apparent
on the face of the papers, and these include the insufficiency of
the facts stated, and all other matters going to the jurisdiction
as well as of other papers filed in the case.    The most general
way of reaching the question of irregularities is by a motion to
vacate or dissolve, and the motion is substantially treated as a
demurrer to a pleading.    The court will not go behind the face
of the papers themselves, unless the objection embraces some
feature connected with the execution or filing of the affidavit.
These principles are somewhat elementary, and hardly need to
have been enumerated; but, inasmuch as this is the first time
this court has been called upon to construe attachment proceed-
ings under our statute, we have thought it best to make these
few general statements, in order to hereafter establish a uni-
form mode of procedure in these cases.

Our statute, in attachment proceedings, requires an affi-
davit by the plaintiff, or some one in his behalf, and it must
show:    (1)    The amount of the debt, and the nature thereof.
(2)    One or more of the following grounds for attachment:
That the defendant is a foreign corporation, a non-resident of
the territory, or has departed therefrom with intent to defraud
his creditors, or to avoid the service of summons, or keeps him-
self concealed with such intent; or that the debt was incurred
by obtaining plaintiff's property under false pretenses; that de-
fendant is about to remove some of his or its property out of
the territory, with intent to defraud creditors; or that he has
assigned, disposed of, secreted, or is about to assign, any
property with like intent; or that a debtor residing in this ter-
ritory, who is about to remove from the county where he re-
sides, with intent to permanently change his or her residence,
and upon demand refuses or does not secure the debt, the cred-
itor shall have the right of attachment.    These proceedings

were evidently based upon the latter clause of our attachment law, and the grounds were that the defendant was about to remove from the county of Hyde, where he resided, with intent to permanently change his residence, and that a demand had been made upon him to secure the debt, and that he had refused to do so.

The defendant, in his motion to dissolve, relies upon both grounds for dissolution, and adopts both methods of procedure. As the first ground of dissolution, he denies that the defendant is about to remove from the county with intent to permanently change his residence. In support of this denial, he files his own affidavit, in which he admits that he had declared his intention to go to some place where he could obtain employment, in order to maintain his family until another crop could be grown, but that he never contemplated a permanent change of residence from the county. This was all the evidence upon the part of defendant upon this ground, except the presumption arising from the fact that he was the claimant of a timber-culture claim, and a quarter section of land more or less cultivated. In opposition to this, and in support of the original affidavit filed upon the part of the plaintiff, the affidavits of Judson K. Sechler, L. Snyder, Jonathan Snyder, and S. R. Meigs were filed. From these it is clearly shown, both by the declarations of defendant and his subsequent acts, that his intention was to abandon his residence in Hyde county, and probably to leave the territory permanently and we are of the opinion that the defendant failed to substantiate his first ground of dissolution of the attachment, and that this allegation in the affidavit was reasonably true.

The second, third, and fourth grounds in the motion embrace the same proposition of law, and will be considered together. At the time of the commencement of these proceedings the plaintiff had two chattel mortgages upon some of the property attached, and which the defendant claimed was of sufficient value to secure and pay him for his debt. This claim of defendant was not denied by plaintiff, except that the crop of wheat upon which one of the chattel mortgages was given was

worthless and of no value as a security.   The question arising upon these propositions and facts is, can a creditor holding collateral security for his debt, upon property belonging to the debtor, maintain an attachment against the same and other property of the debtor?   In Cleverly v. Brackett, 8 Mass. 150, the supreme court of Massachusetts once held that a creditor who had received personal property in pledge for the payment of debt could not attach other property for that debt without first returning the pledge.   This position, however, has been repeatedly overruled by that court.   Cornwall v. Gould, 4 Pick. 444; Beckwith v. Sibley, 11 Pick. 482; Whitwell, v. Brigham, 19 Pick. 117; Taylor v. Cheever, 6 Gray, 146.   In the latter case the court says:   "The decision in Cleverly v. Brackett, 8 Mass. 150, that a creditor, to whom his debtor has pledged a chattel as security for a debt, cannot, in a suit for the debt, attach other property of the debtor without first returning the pledge, is contrary to all the authorities before and since, and is not to be regarded as law."   Drake, Attachm. § 35.   In Buck v. Ingersoll, 11 Metc. 226, it is held that a mortgagee of personal property may waive his rights under a mortgage, and attach the property to secure his debt.   Wade on Attachments, § 19, says: "This is in harmony with the rulings in Maine, where the same liberal provisions in favor of process by attachment prevail as in the State of Massachusetts," and cites:   Libby v. Cushman, 29 Me. 429; Whitney v. Farrar, 51 Me. 418.   "The rulings are to the same effect, as regards mortgages of real property in the State of Louisiana.   Sandel v. George, 18 La. Ann. 526."   The supreme court of Vermont in Chapman v. Clough, 6 Vt. 123, say:   "Where the pledge held by the creditor, as security for the debt, was a good note, it was not incumbent upon him to return it, or relinquish any of the advantages accruing to him from its possession, as a condition to his proceeding by attachment of the debtor's property."   In other states, as in California, where the statute expressly excludes from the class of demands which may be sued by attachment all debts secured by mortgage, pledge, or lien, except when the security has become valueless without the act of the plaintiff or the person to whom

such security is given, the policy is manifestly different. It is intended that the security shall be first exhausted before he shall proceed against the defendant by the harsh process of attachment, provided his security is of any value at the time he seeks to enforce his claim. Where such a statute exists, it, of course will govern. In our state we have no such provisions. Therefore the general rule must prevail, which is as substantially laid down in Massachusetts and Vermont.

We are cited by counsel for appellant to Sections 4388, 4389, Comp. Laws, to show that, before mortgaged personal property can be taken under attachment or execution, the officer so taking must pay or tender to the mortgagee the amount of the mortgage debt and interest, or deposit the amount thereof with the county treasurer, payable to the order of the mortgagee. These sections have no applicability when the attaching creditor and the mortgagee are one and the same person or persons. This law was enacted so that a creditor of the mortgagor, other than the mortgagee, might avail himself of the proceeds of property belonging to the mortgagor, which had a lien upon it, after the person holding the lien had received his pay. In the case at bar, if the plaintiff could have received payment of his debt from some other person than himself, he, no doubt, would have gladly released his mortgage. The position taken by appellant on this point we think untenable.

The fifth ground of the motion is that the affidavit for the attachment is not made by the plaintiff, nor is it made by a person having authority to make it, nor that the person making it could have had personal knowledge of the facts therein stated. There is ordinarily no difficulty in ascertaining whether the affidavit was made by one authorized by law to make it or not, for the statutory terms are usually sufficiently clear, by stating who shall make the affidavit, but upon this point our statute is silent. Section 4995, Id., says: "The warrant may issue upon affidavit, stating: * * *" The words are not restrictive, but general. It only requires an affidavit alleging certain facts to exist, and does not say who shall, or shall not, make it, so that the party making the affidavit knows the facts to which he

swears.   It may be said, generally, that, in the absence of any statutory provisions for the appointment of agents or attorneys for this purpose, any one authorized by the plaintiff to collect may make the affidavit as one of the incidents of his authority. It is recognized as a means to the end.   Murray v. Cone, 8 Port. (Ala.) 250.   It has been held unnecessary for an attorney who makes the affidavit to state in the body of the instrument or elsewhere that he is acting under a written power of attorney. It is sufficient to state that he acts as the agent or attorney of plaintiff.   In this instance the affidavit is made by Olin G. Reiniger, attorney for the plaintiff, and he swears of his own knowledge that the defendant is justly indebted to the plaintiff in the sum of $116; that no part of said sum is paid; and that he derives his knowledge of the above facts by the admissions of defendant; and that he has in his possession notes of that amount against the defendant belonging to the plaintiff, for collection.   These allegations and statements are sufficient to cover the requirements of the statute.

The sixth, seventh, and eighth grounds for a dissolution of the attachment are that the debt upon which the original cause of action was instituted was not due at the time, and that the affidavit for the attachment does not contain the allegations required by the statute for the issuance of the writ upon a debt not due.   The affidavit states that the cause of action is founded upon two promissory notes given by defendant to plaintiff for the sum of $50 each, one payable on the 1st day of November, 1888, and the other payable on the 1st day of November, 1889, which, together with the accrued interest, make the sum of $116. The affidavit was sworn to on the 23d day of July, A. D. 1889, and writ of attachment issued on that day.   From the face of the affidavit it will be seen that one of the notes and part of the cause of action was not due until November, 1889, and in the traverse of this affidavit by the defendant he exhibits a chattel mortgage, in the body of which are the following words:   "For the purpose of securing payment of $50 and interest due to William Deering & Co., according to the condition of one promissory note payable to William Deering & Co., viz., $50.00,

dated July 13, 1887, due November 1, 1888, with interest at 8 per cent per annum, extended until October 1, 1889, does hereby sell and mortgage unto William Deering & Co., of the city of Chicago, Ill., their successors and assigns, the following described property, now in my possession, owned by me, and free from all incumbrances, to-wit, forty acres of wheat," etc. This mortgage was dated the 28th day of November, 1888, a few days after the note was due by its original terms. This note was one of the notes described in the affidavit for attachment, as claimed by the defendant, and not denied by the plaintiff. Here we find a plain and unambiguous written agreement, for a valuable consideration, to extend the time of payment of this note to October 1, 1889; the defendant giving a mortgage upon property to secure its payment at that time, and the plaintiff accepting it. Under these circumstances, when was this note due, and when could payment be enforced? Was it November 1, 1888, or was it October 1, 1889? We think that the effect of this agreement was to extend the time of payment of the note to October 1, 1889. In Harshaw v. McKesson, 65 N. C. 688, the court held that "when one indebted by note gives a mortgage to the creditor for his security, upon the terms of an indulgence, there is an implied promise, in accepting the mortgage, to suspend action on the note." "There is no doubt that a negotiable bill or note," says Mr. Daniel, "given for or on account of a contemporaneous or preexisting debt, and whether or not it be in renewal of a previous bill or note, suspends all right of action on such debt during its currency.—that is, until it is dishonored by non-acceptance or non-payment." 2 Neg. Inst. § 1272. In the case at bar, when the plaintiff accepted the mortgage given by defendant on the 28th day of November, 1888, as security for the note due November 1, 1888, he accepted it with its conditions and terms, one of which was to extend the time of payment of the note until October 1, 1889, and in the taking of this security he suspended the remedy upon it until that time. If this be true, neither of the notes upon which the action was brought were due. Such being the case, can the attachment laws be invoked for the pur-

pose of collecting them? We answer. they can, provided a proper affidavit is filed for that purpose, as the foundation for the proceeding. Our statute says that a creditor may bring an action on a claim before it is due, and have attachment against the debtor provided the debtor has sold, conveyed, or otherwise disposed of his property with a fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts; or when the debt was incurred fraudulently; or when he is about to sell, convey, or dispose of his property with a fraudulent intent; or is about to remove his property, or a material part thereof, with the intent or to the effect of cheating or defrauding his creditors, or of hindering and delaying them in the collection of their debts. We have stated that proceedings by attachment are dependent upon the statutes governing them, and a strict construction must be placed upon them, and be strictly pursued, in order to make them operative. The affidavit filed in the case at bar would have been good if the cause of action had been due. When an action is brought upon a debt not yet due, all the necessary averments required by the statute should appear in the affidavit. None of these appearing in the affidavit, as required by Section 5014, Comp. Laws. it was error in the court below, in overruling the motion, to dissolve the attachment. It will be unnecessary to consider the ninth clause for dissolving the attachment, because, for the error above stated, the motion must be sustained, and the order of the court below reversed. The cause is therefore remanded to the court below, with instructions to enter an order dissolving the attachment.