CHICAGO LUMBER COMPANY, PLAINTIFF IN ERROR, V. GEORGE E. FISHER, DEFENDANT IN ERROR.

1. Chattel Mortgage: TRANSFER OF PART OF PROPERTY BY CONSENT OF MORTGAGEE. Where a debtor executed to his creditor a chattel mortgage upon a stock of goods, and retained possession of the goods, there being no agreement by which the mortgagor was to sell any part of the goods in the usual course of trade nor permission given him by the mortgagee so to do, the fact that a small part of the mortgaged property was, by

the consent of the mortgagee, transferred to a third party in payment of a debt, would not of itself render the mortgage fraudulent and void as against creditors.

2. ————: PROPERTY NOT SUBJECT TO SALE ON EXECUTION AGAINST MORTGAGOR. Where a chattel mortgage is given to secure a *bona fide* debt, and the mortgagee has taken possession of the mortgaged property, or has the right to do so under the provisions of the mortgage, a judgment creditor of the mortgagor cannot, without the consent of the mortgagee, levy upon the mortgaged property, and sell it under execution. And especially would this be the case if the mortgaged property consisted of a number of articles such as a stock of goods. The remedy would be by garnishee process or such other proper proceeding as would reach the interest of the mortgagor after the debt due the mortgagee was paid.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Charles E. Magoon,* for plaintiff in error.

*R. D. Stearns,* for defendant in error.

REESE, J.

This was an action in replevin by which defendant in error procured the possession of certain property on which he held a chattel mortgage.

Defendant in that action, plaintiff in error here, seeks a review by proceedings in error. The property, described in the mortgage at length, consisted of a stock of furniture, upholstering goods, etc. The mortgage was given for the purpose of securing the payment of a promissory note for the sum of one hundred and fifty dollars, which was given to cover rent due and to become due for the store building in which the furniture was kept. Plaintiff in error is creditor of the mortgagors and caused an execution to be levied upon the property, when this action was instituted for its possession.

The first contention of plaintiff in error is, that at the

time of the execution of the mortgage it was agreed that the mortgagors might continue to sell, in the usual course of trade, the mortgaged property, and that therefore the mortgage was fraudulent and void as to creditors.

The mortgage itself contains no provision giving this right, and we think the testimony fails to show any agreement of the kind at the time of the execution and delivery of the instrument. However that may be, the most that can be said as to such an agreement being made is, that there was a conflict in the testimony upon that point and the question was one for the jury to decide.  *Johnson v. Phifer*, 6 Neb., 401.

The trial court instructed the jury that "a chattel mortgage of a stock of goods used in the way of retail trade, and where the mortgagor is allowed to continue in the possession of the property and to sell the goods in the usual course of trade, is in law fraudulent and void, as against the creditors of the mortgagor, no matter whether the parties intended any actual fraud or not." By this and other instructions the question here presented was fully submitted to the jury and they must have found that no such an agreement was made.

The testimony upon the question as to whether the mortgagors continued selling the goods after the execution of the mortgage is very meager, with the exception that a few articles of no great value were by the consent of the mortgagee transferred to some one in payment of a debt.

The court, among other instructions gave the following: "You are instructed that the mere fact (if such it be) that Fisher left the goods in the possession of the firm and knew that they were selling small parts of the same, will not of itself render the mortgage fraudulent and void as to defendants, but if you find that there was an agreement between the firm and plaintiff that they were to sell the goods the same as before and apply the proceeds to their own use this would render the mortgage void." The giving of this instruction is alleged as error.

In view of the testimony in the case we cannot say there was error in giving it. It is not the specific sale of a few articles of inconsiderable value, with the consent of the mortagee, that makes a mortgage fraudulent, but where such sales are made in the usual course of trade, where there is a "floating mortgage which attaches, swells, and contracts as the stock in trade changes, increases, or diminishes, or may wholly expire by entire sale and disposition, at the will of the mortgagor. Such is no certain security upon specific property. * * * In such a case the whole right to dispose of the property to pay a debt depends on the will of the debtor." *Collins & McElroy v. Myers*, 16 Ohio, 554. The jury might well find that the sales made, if any, were not such as would disturb the lien of the mortgage, and that finding could not, under the rule stated in *Johnson v. Phifer*, be molested.

It is claimed that there is an irreconcilable conflict between instruction number four, given upon the request of defendant in error, and that numbered eight of those given upon the request of plaintiff in error. They are as follows:

"4. If you find that Fisher, the plaintiff, had actually taken possession of the goods at or before the time when the execution was levied (if you find that there was a levy) or that he had a right of possession under his mortgage, you are instructed that this would cut off any rights of the defendant under such execution and there would be no leviable interest in such goods, unless the mortgage was void as to creditors."

"8. The jury are instructed that the interest which a mortgagor possesses in and to the property mortgaged by him, is such an interest as may be seized and levied upon by execution while in his possession."

The objection to the first instruction and the support of the last seem to be based principally upon *Burnham v. Doolittle*, 14 Neb., 214. It may be observed that there was some testimony in this case tending to prove that defend-

22

ant in error had taken possession of the mortgaged goods prior to the levy by the officer. If that were true (and of which the jury were the sole judges), then, according to the decision in *Burnham v. Doolittle*, the proper remedy was by garnishment. But suppose he had not taken actual possession, but had the right to do so at any time, what condition would he then be in? To our mind that must depend to a great extent upon the character of the mortgaged property. In case that property consisted of a single or but few articles which might be followed into the hands of the purchaser and the lien of the mortgage be perpetuated, the mortgagee's interest might be protected and the *interest* of the mortgagor sold. But suppose the property consisted of a stock of groceries, as in the case of *Hedman v. Anderson*, 6 Neb., 392; or of a lot of upholstering goods, moulding, bureau handles, castors, etc., as in this case, how could such property be sold and delivered to purchasers without destroying the lien of the mortgagee? Most clearly it could not be done, and we do not think *Burnham v. Doolittle* so holds. In that case the then chief justice, Lake, in writing the opinion, says: "Having arrived at the conclusion that *an equity* of *redemption* is such an *interest* as may be reached by the process of attachment or garnishment before judgment, it only remains for us to determine whether the remedy afforded by the statute, giving the right of garnishment after judgment in aid of execution, was intended to be any less effective and complete in this respect." That case being a proceeding in garnishment, the court held that "whatever interest the judgment debtor had at the date of the service of the summons in garnishment in the two notes held as collateral security, which seems to be merely the equity of redemption, or whatever may remain of the proceeds thereof after paying the secured debt, the garnishee is answerable for." In this opinion it is said, and partly quoted in the brief of plaintiff in error, "But in view of our attachment law, and the ruling of the

supreme court of Ohio on a statute from which ours is copied, and upon more mature reflection, we are now satisfied that whatever interest a mortgagor of chattels may have in them, in this state, may be reached by seizure under a writ of attachment at any time while in his possession, and by means of the process of garnishment if they have passed into the hands of the mortgagee." If by this language the learned judge intended to say that, under all cirumstances, where property is in the possession of the mortgagor, an execution or order of attachment may be levied upon the *property itself*, and the property sold, the mortgagee being thus in many instances wholly deprived of his security, we cannot agree with him. But if he intended to say that the interest—*i.e.*, the equity of redemption—might be seized upon as an *interest*, then we should not differ, perhaps. And this, we think, is in the line of reasoning adopted by the writer of that opinion, for he says, after citing *Carty v. Festemaker*, 14 Ohio State, 457: "The seizure of the property under the order of attachment, it was said, 'creates a lien in favor of the attaching creditor upon the interest of such mortgagor.' Now the interest of a mortgagor in property thus circumstanced, as to the mortgagee, is but the equity of redemption, or what may remain after the mortgage debt is paid. And if this interest be liable to attachment, as there held, it seems to follow necessarily that where property covered by a mortgage has passed into the hands of the mortgagee, the equity of redemption may be reached by garnishment, which is nothing but a species of attachment whereby property rights which the officer holding the order cannot 'come at' and take into his possession, may be brought within the jurisdiction of the court, and by its judgment subjected to the payment of the owner's debts."

But if we are wrong in this conclusion, it still remains that the case of *Burnham v. Doolittle* was one where it was sought to reach property of a judgment debtor in the hands

of a pledgee by garnishee process, and not by a direct levy of the execution on the thing pledged. And the question before the court was not whether the execution creditor could levy upon the pledge and deprive the pledgee of its possession. To that extent the decision is not authority in this case, except in so far as the reasoning employed may commend itself as sound.

If our view is correct, it follows that there is no such contradiction in the instructions as could mislead the jury to the prejudice of plaintiff in error.

As the other questions presented were principally questions of fact, upon which the jury were required to pass, and as they seem to have been fairly submitted, we will give them no further consideration.

As it does not affirmatively appear that the verdict was erroneous the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.