## A. B. MOORE v. J. L. CALVERT *et al.*

### (Filed Aug. 25, 1899.)

1. REPLEVIN—*Action Against Sheriff—Attachment.* Where a replevin is brought against a sheriff to recover chattels held by such officer under writ of attachment, it is not error to permit the attachment plaintiff to be substituted as defendant and to dismiss said cause as to such sheriff.

2. EXECUTION—*Personal Property—Special Lien.* An officer who levies an execution upon personal property acquires a special lien thereon, dependent on possession, and, if such officer surrenders possession of the property levied on to a senior lienholder, the lien of the execution is thereby devested and lost.

3. CHATTEL MORTGAGE—*Execution.* The liens created, respectively, by mortgage and execution on the same chattels, are essentially different, and cannot co-exist. Before the lien of an execution can attach, the officer must pay off or tender the amount of any existing mortgage liens, or deposit the amount of the mortgage debt with the county treasurer, for the use of the holder of the mortgage.

4. SAME—*Forclosure—Waiver of Rights.* A mortgagee of chattels, who has taken possession of the mortgaged property for the purpose of foreclosure, cannot waive the right to have the mortgaged debt paid or deposited with the county treasurer, so as to make effective the levy of an execution, without delivering possession of the property to the officer, and waiving the lien of his mortgage.

5. SAME—*Satisfaction—Equitable Lien.* When an execution creditor, in order to enable him to make an effective levy on mortgaged chattels, pays off and satisfies the lien of the mortgage, and afterwards the lien of his execution for any reason fails, such person acquires an equitable interest in the mortgaged chattels to the extent of the money advanced by him to satisfy the mortgage lien, and, while the lien of the mortgage becomes discharged, equity will substitute a lien for the benefit of the execution creditor, and a court of equity will enforce such lien in a proper proceeding, to the extent of the equitable interest of the person satisfying such mortgage lien.

6. APPEAL—*Reversal—Judgment.* When the reversal of a cause can only result in additional costs and expense, and the facts are

practically uncontroverted, and the rights of none of the parties can be prejudiced, the supreme court, on reversing a judgment, will render the judgment that the trial court should have rendered, and direct execution to issue thereon.

7. CHATTEL MORTGAGE—*Attorney's Fee.* Where, by the terms of the chattel mortgage an attorney's fee is collectable, provided the mortgage is foreclosed by an attorney whose name is signed to the notice of sale, and the mortgagor, before the maturity of the mortgage debt, delivers possession of all the mortgaged chattels to the mortgagee, with authority to sell the same and apply the proceeds to the payment of necessary expense and the mortgage debt, *held*, in an action between the mortgagee and a junior lien-holder respecting the mortgaged property, no attorney's fees can be charged against the property as part of expense of foreclosure.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before A. G. C. Bierer, District Judge.*

*S. H. Harris*, for plaintiff in error.

*Henry S. Johnston, James B. Diggs* and *A. R. Musseller*, for defendants in error.

Action by A. B. Moore against J. L. Calvert and others. Judgment for defendants. Plaintiff brings error. Reversed.

STATEMENT OF THE CASE.

On June 30, 1897, J. W. Yoemans executed to A. B. Moore a promissory note for the sum of $425, payable 60 days after date, with 12 per cent interest after maturity, and, to secure said note, on the same day executed to Moore a chattel mortgage on a number of ricks of wheat standing on his farm in Noble county. Before the note and mortgage matured, Yoemans delivered possession of the wheat to Moore, and authorized him to thresh and market the wheat, pay all necessary expenses, and satisfy the mortgage debt from the proceeds, and pay the

surplus to the mortgagor. After Moore had taken actual possession and control of the wheat for the purpose of converting the same into cash, and carrying out the terms of the mortgage as well as the subsequent oral agreement, the defendant in error Calvert caused two several executions in his favor, issued on judgments against Yoemans, to be levied on said wheat, and possession was taken of the wheat by Akins, the sheriff, upon said executions. On the trial of this cause, the jury found that these executions were levied and possession taken with the express consent of Moore, the mortgagee. Subsequent to the levy of the executions, Moore demanded a return of the wheat to him, under his mortgage, and the sheriff, recognizing the superior lien of Moore's mortgage, released the wheat from the levy to the extent of Moore's interest therein, and delivered possession to Moore. Immediately Moore procured a thresher, and commenced threshing the wheat and storing it in a bin ready for market. After he had threshed about 900 bushels, Akins, the sheriff, again retook possession of the unthreshed portion of the wheat, and forcibly kept Moore from continuing to finish the threshing. After demand by Moore for possession, in order to enable him to thresh and sell enough wheat to satisfy his claim for expenses and amount due on his mortgage, and a refusal on the part of Akins to re-deliver the wheat, Moore began this action in replevin against Akins, the sheriff, to recover possession of the unthreshed wheat in the ricks. Akins refused to give a re-delivery bond, and the wheat was delivered to Moore. Moore threshed all the wheat, and sold it on the market, realizing therefor, in gross, about $1,200. Before causing the executions on these judg-

ments to be levied, Calvert deposited with the county treasurer of Noble county the amounts of three several chattel mortgages, aggregating about $150, which were liens upon the wheat, but junior to Moore's mortgage. The petition in replevin alleged that the plaintiff had a special interest in the wheat, by reason of the lien of his mortgage, and that he was entitled to the possession for the purpose of threshing and selling said wheat, and applying the funds therefrom to the payment of the costs and expenses of threshing, marketing and handling the wheat, to the satisfaction of the lien of his mortgage, and accounting for the surplus to the mortgagor.

It was further averred that the mortgage contained a provision for the payment of an attorney's fee of 10 per cent. if the mortgage should be placed in the hands of an attorney for collection, and the name of the attorney was signed to the notice of sale, and it was averred that the mortgage had been placed in the hands of S. H. Harris, an attorney, for collection, and that the mortgagor had waived the notice of sale, and authorized a sale of the wheat at private sale.

Akins, the defendant in the replevin action, first answered, but subsequently filed a motion to have Calvert, the execution plaintiff, substituted as defendant, and that he be discharged. At the same time Calvert filed his application for leave to be substituted as a defendant and for leave to plead to the petition. The court sustained this motion and application, and made an order discharging Akins, and substituting Calvert as defendant, and allowing him to plead. Calvert then filed an answer and cross-petition. His pleading consisted of, first, a general denial of all the allegations, except as to

the execution of plaintiff's mortgage, which was admitted. The second defense set up the judgments against Yoemans, the issue and levy of the executions on the wheat, and the release of the levy to the extent of plaintiff's lien, and that the plaintiff had already threshed and received more than a sufficient quantity of wheat to pay his claim and all expenses. The cross-petition set up the junior mortgages that Calvert had paid, alleged that the mortgagees had each accepted the money deposited for them, and asked for an accounting and judgment against the plaintiff, Moore, for any surplus in his hands after satisfying his mortgage, or of a sufficient sum to satisfy his executions and said cancelled mortgages paid by him.

Demurrers were filed to the answer and cross-petition, and overruled, and exceptions saved. A reply was filed to the answer and cross-petition. The cause was tried to a jury, and a verdict returned, finding that Moore was entitled to the possession of the property at the time he began his action in replevin; that the sheriff levied the executions on the wheat, subject to Moore's mortgage, with his consent and agreement; that the levy had only been released to the extent of paying off the mortgage, and that plaintiff's mortgage was fully discharged at the time the sheriff retook possession of the property; that the value of the property taken under the writ of replevin was $582.29; and that the amount of Calvert's executions and mortgages was $372.10. On this verdict judgment was rendered for plaintiff, Moore, that he was the owner and entitled to the possession of the property at the time of bringing his action, and that he recover the entire costs; that Calvert have a return of the 840 bushels of wheat that were taken on

the writ of replevin, or, in case a return could not be had, that he recover of Moore the sum of $372.10, the value of his interest in the property.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error makes serious complaint of the action of the trial court in substituting Calvert, the execution plaintiff, for the sheriff, as defendant in the cause. Our statutes (sections 3914-3917, Statutes 1893) make ample provision for substituting the execution plaintiff, for whose benefit the sheriff holds chattels, as defendant in place of such officer, in actions by third persons to replevin the property from the officer. The procedure authorized by the statute seems to have been followed in this cause, and we are unable to see how the material rights of the plaintiff were in any way prejudiced thereby.

It is next contended that the trial court erred in overruling the demurrer to Calvert's answer and cross-petition. We think this contention is well founded, as to the ruling on the demurrer to the paragraph of the answer which attempts to set up the liens of the executions. At common law, mortgaged chattels were not subject to levy and sale on execution. The title to the mortgaged property was in the mortgagee, and he was entitled to the possession until a breach of the conditions of the mortgage, when his title became absolute, and all the interest the mortgagor had in the property was an equity of redemption. But our statutes have materially modified the common law doctrine. Under the law of this Territory, the title to the mortgaged property remains in the mortgagor, and the mortgagee has only a lien on the property for the amount of the mortgage

debt. The mortgagor retains possession of the mort-
gaged chattels until conditions are broken, when the
mortgagee becomes entitled to the possession for the pur-
pose of enforcing his lien. The title does not then vest
in him, but he must sell the property in order to devest
the title of the mortgagor and for the purpose of satis-
fying the mortgage debt. When the mortgagee takes
possession of the property, he becomes a trustee for
the sale and disposal of the property, and the mortgagor
or his assigns and subsequent lienholders have a right
to insist upon a faithful application of the property to
the payment of the mortgage debt and other interests
therein or liens thereon.

Our statute (sections 3279, 3280) permits mortgaged
chattels to be levied on by execution or attachment, but
before the officer can take possession of the property,
he must first pay or tender to the mortgagee the amount
of the mortgage debt, or deposit the amount with the
county treasurer, for the use of the mortgagee. It is
contended by the defendant in error that the levy in this
case was made under an agreement with the mortgagee
whereby he waived this statutory right.

In the case of *Wilson v. Felthouse*, 57 N. W. 878, the
supreme court of Iowa, in construing a statute iden-
tical with ours, held that the provision requiring pay-
ment, tender, or deposit of the mortgage debt was for
the sole benefit and protection of the mortgagee, and if
he waived this right, and consented to a levy subject to
his lien, other parties in interest could not object. This
position is not supported by any other authorities.
While this rule may be sound, it is not applicable to
the facts in this case. In the Iowa case, the property
was in the hands of an assignee for benefit of creditors.

at the time the levy was made, and no objection was made by either mortgagor or mortgagee. The mortgagee had not taken possession of the mortgaged property, and had but a lien thereon for the amount of his debt. In the case under consideration, the mortgagee, Moore, had taken possession of the wheat for the purpose of foreclosing his mortgage, and had actual possession at the time the sheriff attempted to levy the executions in favor of Calvert. Moore could give no consent to a valid levy without surrendering his possession, and placing the property in the custody of the law. The rights of a mortgagee in possession for purpose of foreclosure, and that of an officer under the levy of an execution in favor of a third party, are so antagonistic that the two cannot co-exist. One must yield to the other, and, the rights of the mortgagee being paramount to that of the subsequent execution debtor, the latter must yield.

The paragraph in Calvert's answer which attempted to set up his execution liens disclosed the fact that the mortgagee was in possession of the wheat at the time his executions were levied, and, as it is not alleged that the amount of the mortgage debt was either paid, tendered or deposited, the levy was ineffectual, and constituted no lien on the property; hence the defense attempted to be pleaded was no defense, and was not sufficient to require the mortgagee, as trustee, to account to Calvert for any surplus in his hands, after satisfying his lien, to be applied on the executions. It was error to overrule a demurrer to this paragraph of defense, and as the proof made under the general denial did not cure this defect, but, on the contrary, clearly showed that the mortgagee was in possession of all the wheat at the time the levy was attempted, and that no tender, payment, or deposit

of his claim was made prior to the attempt to levy, it was error to include the amount of the executions in the judgment against the plaintiff in error.   The position of a mortgagee in possession for the purpose of foreclosure, under our law, is similar to that of a mortgagee at common law before breach of condition, and the authorities are approximately unanimous to the effect that in neither case can the interest of the mortgagor in the mortgaged property be reached by execution or attachment.   The remedy is by garnishment, or proceedings in aid of execution, to reach any surplus that may remain in hands of mortgagee after satisfaction of his interest. (Cobbey, Chat. Mortg. secs. 722-724; *Burnham v. Doolittle,* 14 Neb. 214, 15 N. W. 606; *Reed v. Fletcher*, 24 Neb. 435, 39 N. W. 437; *Bank v. Clement,* [Neb.,] 26 N. W. 583; *Lumber Co. v. Fisher,* 18 Neb. 334, 25 N. W. 340; *Cochrane v. Rich,* 142 Mass. 15, 6 N. E. 781; *Keith v. Haggart,* 4 Dak. 438, 33 N. W. 465; *Coughran v. Sundback,* [S. D.] 70 N. W. 644.)

If the rule was otherwise, and the levy of the executions had created a lien in favor of Calvert, such lien was, under section 3215 of our Statutes, dependent upon possession, and when the officer surrendered possession of the wheat to Moore, after his attempted levy, any lien acquired by the execution was lost, and no new levy was averred or proved.

The third defense was in the nature of a cross-petition, and alleged that, prior to the levy of the executions in favor of Calvert, the defendant Calvert discovered of record three several mortgages on the wheat in controversy; and that in order to enable him to make the levy of his executions, and prior to such levy, he deposited with the county treasurer of Noble county, in discharge

and payment of said mortgages, for the Harvester King company $110, for W. H. Primrose $20, and for J. W. Quick $20 (all mortgagees;) and that each of said mortgagees accepted said deposit, and that he was entitled to have the same paid from any surplus after payment of Moore's mortgage and expenses; and he asked for an accounting, and that he be reimbursed from the surplus in the hands of Moore.

It is claimed that the trial court erred in overruling a demurrer to this paragraph of defense or cross-petition. The trial court evidently treated the levies of the executions as valid, and held that the deposit of the several sums for discharge of prior mortgage liens was a compliance with the statute. While the reasons of the trial court cannot be sustained, this is immaterial, provided the conclusion was correct.

We are cited to a long line of authorities holding that the payment, tender, or deposit of the money in discharge of a mortgage on chattels by an execution or attachment creditor discharges the lien of the mortgage, and leaves the person making such payment, tender or deposit without protection, if the execution or attachment fails. We are not inclined to adopt such a rule. The purpose of requiring an execution or attaching creditor to pay off a prior chattel mortgage before levying on the mortgaged property is to enabel the creditor to reach the interest of the mortgagor without disturbing the rights of the mortgagee, and, strictly speaking, in law the legal effect is to discharge the mortgage lien. Neither the holder of such a mortgage, nor the execution creditor who made the payment, tender, or deposit, could foreclose such mortgage in the manner provided by statute for enforcing the rights of a mortgagee. But equity will fur-

nish a remedy for the protection of one who has technically discharged such a mortgage for the purpose of enabling him to subject the interest of the mortgagor to the payment of his debts. It is manifestly unjust and inequitable to compel a creditor to pay the debt of another in order to protect his own interest, and then require him to lose the amount so paid, in the event his execution or attachment fails. It is not the purpose of the law to work such hardships. Equity will preserve the lien so far as to enable the person paying such mortgage to be reimbursed out of the mortgaged chattels to the extent of the interest acquired by the mortgagee through such mortgage. The mortgagor cannot complain of such a rule, because his debt has been paid by another, and the property he hypothecated for payment of the debt is subjected to no greater liability than that for which he pledged it. Neither are subsequent lienholders, who took their liens subject to such mortgage, nor unsecured creditors, placed in any worse condition than if the property had been applied to payment of the debt to the original mortgage. This view is not unsupported by authority.

In the case of *Deering v. Wheeler*, 41 .N. W. 200, the supreme court of Iowa had under consideration a similar question, and held: "Where an execution creditor levying on personal property deposits the amount of certain prior mortgage liens in supposed compliance with the statute, and the mortgagees release all claims, equity will effectuate the intention of the parties, though the execution creditor acquired no right under the statute, not having complied with its terms."

The case of *Armstrong v. McAlpin*, 18 Ohio St. 184, is not materially different in principle.    Armstrong, the

sheriff, levied several writs of attachment on the chattels of Brown. Brown subsequently executed a chattel mortgage on the property to McAlpin & Co. After the execution of the mortgage, two other attachments were issued against Brown, both of which were levied on the property in question. McAlpin & Co., the mortgagees, paid off the prior attachments, and instituted their action in replevin against Armstrong, the sheriff, for possession, under this mortgage, and alleged ownership of the prior attachments. Armstrong, by cross-petition, set up the claims in attachment of the two junior attaching creditors, and alleged that Brown had an interest in the property subject to these attachments over and above all valid prior liens, and asked to have the surplus ascertained and applied to the payments of the amounts represented by the attachment writs. It was claimed, in favor of Armstrong, that, in recovering possession of the property from the sheriff under their mortgage, the prior attachment liens were extinguished, both in law and in equity. The court said: "The legal effect of the mortgage, as against Brown, and the subsequent creditors in attachment, was to vest in the mortgagees the right and title of possession of the property, and the possession of the sheriff, under the subsequent attachments, was bound to yield to the paramount claims under the mortgage. The mortgagees, to obtain possession and protect their title, might purchase prior liens, and if they did so, and by the enforcement of the mortgage such liens should be technically extinguished, yet, for the money thus expended, a corresponding equity would arise in their favor in the property."

In *Grocer Co. v. Losey*, (Iowa) 78 N. W. 75, the attaching creditor, before levy of his attachment, purchased and took an assignment of the prior chattel mortgage. He

then took possession of the property under the chattel mortgage and sold the same under the power in the mortgage. The attachment was levied subject to the mortgage. The owners of the property executed a number of subsequent chattel mortgages, and a number of questions arose as to the interests of the several parties. It was contended that the payment of the mortgage by the attaching creditor was to enable them to enforce the attachment against the property, and was, in effect, a discharge of the mortgage and extinguishment of the lien. The court held that, notwithstanding it was evidently the purpose of the attaching creditor in paying the mortgage to aid the collection of their claim against the debtor, yet they had taken an assigment of the mortgage debt to themselves, and that they might legally sell the property under the mortgage, leaving the attachment to attach to any surplus. We are unable to see why, in sound reason or upon principle, it is not in harmony with well-settled principles and long-established rules to give to the execution creditor, who pays a prior mortgage lien, a right, in equity, to enforce the equity he acquires in the property by reason of such payment, whenever his statutory remedy shall, for any reason, fail.

In the case under consideration, Calvert was the execution creditor. Yoemans was the execution debtor. Before levying the execution on the property of Yoemans, Calvert found on record the three chattel mortgages which were liens on the property that he desired to subject to the levy of his executions. In order to make, as he believed, his levy effectual, he deposited the money with the county treasurer to pay these mortgages. The mortgagees accepted the money so deposited for them,

and Calvert became the equitable owner of these mort-
gages. It is true, under the statute, they are, in con-
templation of law, discharged, and the statute substi-
tutes another right for these liens. It requires the prop-
erty to be sold on the execution, and the first moneys
realized from the sale to be used to reimburse the person
who paid the mortgage debt. But the lien of the mort-
gages was only technically discharged, and for the money
thus advanced by the creditor a corresponding equity
will arise in his favor, and a court of equity will protect
and enforce such interest.

The mortgagee, Moore, was entitled to the possession
of the mortgaged property until his debt was paid, and
his necessary expenses incurred in caring for and market-
ing the grain had been liquidated. When he had threshed
and sold enough of the wheat to pay his expenses and
satisfy his mortgage lien, his interest in the property
ceased. He no longer had any financial interest therein.
He was bound to account for the surplus to the mortga-
gor or to any junior lienholders. He became a trustee for
the benefit of those whose interests were junior and sub-
ject to his interest. If he sold more grain than was
necessary to satisfy his claim, he became liable for its
value, and any junior lienholder had a right to an account-
ing, and to have the surplus applied to the payment of the
liens in the order of their priority. Calvert was the
owner of the equitable liens represented by the discharged
mortgages which he had paid, and in the replevin action
by Moore he had a right, by cross-petition, to set up his
equities in the property, and have the same determined;
and if Moore was found to have a surplus of the wheat,
or its proceeds, after satisfaction of his just demands,

equity would require such surplus to be applied to the satisfaction of Calvert's equities. The cross-petition, while somewhat defective, was sufficient to withstand the demurrer, and no error was committed in overruling it.

The trial court refused to allow Moore any credit for attorney's fees, and this question is presented in various ways by the record. The note provided for an attorney's fee, if it was placed in the hands of an attorney for collection. The mortgage contained a similar provision, with the additional limitation that the attorney's fee was payable if the mortgage was foreclosed by an attorney and the name of the attorney was signed to the notice. We think the trial court was correct in excluding any claim for an attorney's fee. Before the note became due, the maker of the note delivered to the mortgagee a sufficient quantity of the mortgaged property to fully satisfy the mortgage debt. He also authorized the mortgagee to sell the wheat at private sale, and after paying all expenses, and retaining a sufficient sum to satisfy the note, to account to him for the remainder. The mortgagor had done all he could do to avoid the necessity for employing counsel to proceed to recover the mortgaged property. He had given absolute control and custody to the mortgagee, with power of sale. No attorney was required to thresh the wheat or sell it on the market. Such services are better performed by mechanics, farmers and laborers than by lawyers. There was nothing to be done in the collection of the note, as against the maker and mortgagor, that required any legal skill or ability, and it would be unfair and unjust to charge Yoemans with the expense of a lawyer in collecting the mortgage debt, after he had surrendered possession of the

property to the mortgagee, and done all that the mortgage required him to do. The fact that it became necessary for Moore to litigate with other persons concerning the mortgaged property was not the fault of Yoemans, and he should not be called upon to pay the expense of such litigation. Moore was not entitled to an attorney's fee, under his contract with Yoemans, and the ruling of the trial court was correct.

There are a number of other errors assigned, but we deem it unnecessary to notice them. This case was tried on the wrong theory of the law, and many errors were committed, but a correct conclusion was reached in part. The court properly adjudged the possession of the wheat to Moore, and that portion of the judgment will be affirmed. The trial court erred in rendering judgment against Moore for the amount of the executions and costs thereon, but properly rendered judgment against Moore for the aggregate amount of the mortgages paid by Calvert. A new trial of the cause could result in no benefit to any of the parties, and would only involve the litigants in more expense. The amounts paid by Calvert on the chattel mortgages are not disputed, and only involve a matter of calculation to determine the aggregate. It appears from the record that there was paid on August 9, 1897, by Calvert to the county treasurer:

| | |
|---|---|
| For W. H. Primrose | $ 20.50 |
| For J.W. Quick | 20.00 |
| For Harvester King Co | 109.67 |
| Aggregating the sum of | 150.17 |

For this amount, with legal interest thereon from August 9, 1897, the plaintiff in error is liable to account to him. There is no question, under the evidence in the

cause, but that Moore has in his hands more than this amount, received from the sale of the wheat, after paying all expenses for which said fund is liable and satisfying his mortgage debt. That portion of the judgment of the district court of Noble county wherein it is adjudged that J. L. Calvert have judgment against A. B. Moore for the sum of $372.10 is hereby reversed, set aside and vacated. And it is now here ordered and adjudged that J. L. Calvert do have and recover of and from A. B. Moore the sum of $150.17, with interest thereon at the rate of 7 per cent per annum from August 9, 1897, and the clerk of this court is directed to issue a special mandate to the court below to award an execution hereon. It is further ordered and adjudged that the plaintiff in error, Moore, and the defendant in error, Calvert, each pay one-half the costs herein.

All of the Justices concurring.