# BELL-WAYLAND CO. v. MILLER-MITSCHER CO.

No. 2284.  Opinion Filed July 8, 1913.

(130 Pac. 593.)

1.  **CHATTEL MORTGAGES—Conditions Against Sale—Validity.** A mortgage on a stock of merchandise, which provides that the mortgagor shall not sell or dispose of any of the property covered thereby without the written consent of the mortgagee, is valid. And, where such mortgage is duly filed for record, then, in the absence of fraud, it constitutes a prior lien to that of subsequent attaching creditors.

2.  **SAME—Description of Mortgaged Goods—Sufficiency.** Where a chattel mortgage on a stock of merchandise describes it as "one stock of goods consisting of dry goods, groceries, canned goods, racket goods, flour, and feed," and gives the number of the lot and block and name of the town, county, and state in which it is located, such description, the mortgage being filed for record, is a sufficient identification to put subsequent creditors on inquiry as to what articles are covered by the mortgage.

3.  **SUBROGATION—Attachment of Mortgaged Personalty—Payment of Mortgage Debt.** Where property is covered by a valid chattel mortgage, subsequent creditors of the mortgagor cannot proceed by attachment against such mortgaged property until the mortgage is paid or the mortgagee satisfied. And where a creditor is confronted in his attachment proceedings by a mortgagee in possession of the property, under a prior mortgage, and pays the mort-

gagee the amount due thereunder, such attaching creditor is sub-rogated to the rights of the mortgagee.

4.   **CHATTEL MORTGAGES**—Mortgagee in Possession—Attachment —Burden of Proof.  Where a mortgagee is in full possession of the mortgaged property by consent of the mortgagor, and a credi-tor of the mortgagor seeks possession of the mortgaged property, under a junior attachment lien, on the ground that part of the property in the mortgagee's possession is not covered by the mort-gage, the burden is not on the mortgagee to prove that all the property in his possession is included in the mortgage, but is upon the attaching creditor to show such fact.  But the rule is oth-erwise where the attaching creditor is in possession under an at-tachment lien, and a mortgagee seeks possession of the property on the ground that the property is covered by his mortgage, which is prior to the attachment lien.  .In such case the burden is on the mortgagee to identify and prove what property is covered by the mortgage.  This rule is based upon the fundamental principle that one who alleges a cause of action must prove it.

(Syllabus by Harrison, C.)

*Error from County Court, Pottawatomie County;*
*A. M. Baldwin, Special Judge.*

Action by the Bell-Wayland Company against G. P. Wilson. The Miller-Mitscher Company intervenes. Judgment for inter-vener, and plaintiff brings error. Reversed and remanded.

*Edward Howell,* for plaintiff in error.

*Lydick & Eggerman,* for defendant in error.

Opinion by HARRISON, C.  This action grew out of con-flicting claims against a stock of merchandise owned by one G. P. Wilson.  Wilson was indebted to one W. F. Caudle on promissory notes aggregating $185 secured by chattel mortgage on his stock of merchandise.  He also owed $101.98 to the Bell-Wayland and $226 to the Miller-Mitscher Company on accounts. The mortgage was executed on the 26th, and filed on the 27th, day of January, 1909.  On May 5, 1909, the Bell-Wayland Company brought suit in the justice court and attached Wilson's stock of goods.  But, before the order of attachment was served, Wilson had turned over his entire stock of merchandise to the mortgagee, Caudle, in satisfaction of the mortgage, and Caudle had possession of same when the constable attempted to levy the order of attachment.  Thereupon a controversy arose be-

tween Caudle, the mortgagee, and the Bell-Wayland Company, the attaching creditor; and, in order to avoid a replevin action by the mortgagee, the Bell-Wayland Company paid Caudle the amount due under the mortgage, with a view thereby of subrogating itself to the rights of the mortgagee. Thereafter the goods were sold under the order of attachment for $500. After rendering judgment on the account, the justice of the peace paid to the Bell-Wayland Company the amount recovered, and also the amount due on the mortgage. There was a balance still left in the hands of the justice of the peace, which was paid over to another creditor; but there is no controversy as to that balance by either party to this action. But, about the time that the Bell-Wayland Company began its attachment proceedings in the justice court, the Miller-Mitscher Company, intervener herein, began attachment proceedings in the county court for the amount due on its account. When the sheriff attempted to serve the order from the county court, he found that the constable had already served the order from the justice court, and was informed that the Bell-Wayland Company had paid off the mortgage and subrogated itself to the rights of the mortgagee. He thereupon executed the order from the county court and made his return to show, "Served subject to the mortgage and other attachment lien." After the money had been paid to the Bell-Wayland Company in satisfaction of the mortgage, the Miller-Mitscher Company intervened in the justice court against the Bell-Wayland Company for the amount of the mortgage, claiming that its attachment lien was prior to the mortgage. The justice court rendered judgment against the intervener, whereupon the intervener, Miller-Mitscher Company, appealed to the county court. After the appeal to the county court, it appears that the county judge made a finding wherein he held that the mortgage was invalid, and permitted the sheriff's return to be amended so as to strike out the portion which showed that the order had been levied subject to the mortgage. The sheriff's return, however, could not change the legal rights of the parties. It does not appear, from the record, whether this was an *ex parte* hearing, or how the matter was brought up; but thereafter

the special judge, who tried the case, rendered judgment in favor of intervener and against the Bell-Wayland Company for the amount received under the mortgage, and from this judgment the Bell-Wayland Company appeals the case here. The record shows some discrepancies as to dates; but the material question involved is whether the mortgage constituted a prior lien to the Miller-Mitscher Company's attachment, and whether the Bell-Wayland Company was in law subrogated to the rights of the mortgagee.

The issue between the parties appears to be whether the Bell-Wayland Company had in law subrogated itself to the rights of the mortgagee. That the Bell-Wayland Company had paid Caudle the amount due on the mortgage is not questioned; but the Miller-Mitscher Company maintains that the Bell-Wayland Company did not pay off and satisfy the mortgage, as required by law, in order to legally subrogate itself to the rights of the mortgagee, but merely purchased the mortgage and had the notes assigned to it, and bases its right of recovery on this distinction.

Section 3455, Wilson's Rev. & Ann. St. 1903 (section 4129, Comp. Laws 1909 [Rev. Laws 1910, sec. 3839]), provides:

"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

Section 3456, *Id.* (section 4130, Comp. Laws 1909 [Rev. Laws 1910, sec. 3840]), provides:

"One who has a lien, inferior to another upon the same property, has a right: (1) To redeem the property in the same manner as its owner might, from the superior lien; (2) to be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby."

Section 3457, *Id.* (section 4131, Comp. Laws 1909 [Rev. Laws 1910, sec. 3841]), provides:

"Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay."

Section 3587, *Id.* (section 4431, Comp. Laws 1909 [Rev. Laws 1910, sec. 4040]), provides:

"Personal property mortgaged may be taken under attachment or execution issued at the suit of the creditor of a mortgagor."

Section 3588, *Id.* (section 4432, Comp. Laws 1909 [Rev. Laws 1910, sec. 4041]), provides:

"Before the property is so taken the officer, on execution, or attachment creditor, must pay or tender to the mortgagee, the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee.* * *"

Under the provisions of these statutes, we can see no merit in the distinction upon which appellee bases its right of recovery. Under the circumstances of this case, the Bell-Wayland Company could not be placed in the position of a mere purchaser of the mortgaged notes, or a speculator in mortgages. It was an attaching creditor; and, when it undertook to satisfy its debt by attaching the property, it was confronted by the mortgagee with a prior lien, and was forced to either abandon its attachment proceedings or satisfy the mortgage; and we are aware of no statute or decision which specifically prescribes the manner in which the mortgage may be satisfied other than the statute above quoted.

In *Dodder v. Moberly,* 28 Okla. 334, 114 Pac. 714, wherein an interpleader sought to dissolve an attachment on the ground that the attaching creditor had not paid, or offered to pay, a mortgage which the interpleader held, this court, through Chief Justice Turner, held:

"On the part of Shive, the interpleader, it is contended that the court erred in overruling his motion to dissolve the attachment, made after the jury had by their verdict sustained his interplea. In this we concur. On the coming in of the verdict, the jury, in effect, having found that the attached property was covered by the prior mortgage of Shive, that neither plaintiffs nor the sheriff, before levying the writ, had paid or tendered to him the amount of the debt and interest thereby secured, or deposited said money with the county treasurer to his order, as provided by Comp. Laws 1909, secs. 4431, 4432 (Rev. Laws 1910, secs. 4040, 4041), it was the duty of the court, *sua sponte*

(18 Enc. Pl. & Pr. 431), to dissolve the attachment, order the property returned, and tax plaintiffs with the cost of the attachment and the cost of the interplea. This for the reason that, as Shive had a prior lien on the property, the plain letter of the statute was violated by the levy. *Ellis v. Smith,* 25 Okla. 234, 105 Pac. 653; *Moore v. Calvert et al.,* 8 Okla. 358, 58 Pac. 627."

It is very clear from the above decision and the authorities therein cited that it is mandatory, upon the part of the attaching creditor, to pay off and satisfy a prior mortgage before he can proceed under the attachment. Now the primary purpose of this law, as intended by the statutes and observed by the above authorities, is not so much to detach the lien created by a mortgage or remove the burden from the property which the mortgage places thereon, but to satisfy the mortgagee's claim—to protect him in his claim and secure him against loss. Hence it could not be material, under the circumstances of this case, whether the Bell-Wayland Company satisfied the mortgage debt one way or another; the purpose of the statute being to protect the mortgagee and to give to the party who satisfies the mortgage lien the same rights which would have accrued to the mortgagee.

Now the validity of the mortgage was not seriously questioned in the trial. In fact, the special judge who tried the case seems, without objection by either party, to have disregarded the finding of the regular judge that the mortgage was invalid, and to have rendered judgment for intervener, not upon the ground of the invalidity of the mortgage, but upon the ground that the evidence failed to show that the property covered by the mortgage was the same property that was attached. But the record shows clearly that the Wilson "stock of merchandise" was covered by the mortgage in question, and that he so treated it and turned it over to the mortgagee; that, when the constable went to levy the attachment, he found the mortgagee in possession of the entire stock, found the building closed, and the door locked, and the key in the possession of the mortgagee—in fact, found the mortgagee in complete possession of the entire stock—and that he had already advertised it for sale, to satisfy his mortgage, by posting notices as required by law. It

had already been turned over to him as the property covered by the mortgage. This, in the absence of fraud, would raise a presumption in favor of the mortgagee's right to the property; at least, it should put an attaching creditor upon inquiry; and, if there were any articles in the stock not covered by the mortgage, the burden was upon the attaching creditor to allege and show such fact. It must be observed that the mortgagee had no title to the property, although in possession. He merely had a lien to secure his debt, and a right to sell the property in satisfaction of the debt.

In *Moore v. Calvert*, 8 Okla. 358, 58 Pac. 627, this court held:

"A chattel mortgagee has no title to the mortgaged property, even after he has taken possession for condition broken, but merely a lien thereon, and his possession is that of a trustee for the sale of the property and the proper application of the proceeds."

Also *Hixon v. Hubbell*, 4 Okla. 224, 44 Pac. 222.

In *Nichols v. Bishop*, 12 Okla. 250, 70 Pac. 188, it was held:

"A defective description in a chattel mortgage is cured by taking possession of the mortgaged property before other rights attach thereto, and no particular mode of taking possession is required; but there must be an actual transfer of possession, in so far as the same is subject to possession and control."

It is seen from the foregoing decisions: First, that the mortgagee, being in possession and control of the property, has only a trustee's right beyond the lien created by his mortgage; second, that any defective description of the property (such as is urged here as to the failure of the mortgagee to show whether there was any property other than that covered by the mortgage included in the stock of goods) is cured by taking possession of the mortgaged property before other rights attach thereto.

Hence, when the intervener asserted that the property was not accurately described in the mortgage, and that the mortgagee had possession of property not included in the mortgage, the burden was upon him to prove such assertion. The rule would be otherwise, however, if the attaching creditor were in possession and the mortgagee should bring an action for pos-

session. This rule is based upon the never-questioned principle that he who alleges a cause of action must prove it. The court, therefore, was in error in placing the burden of proof upon the mortgagee, or upon the party subrogated to his rights. The record shows clearly that the mortgaged property was taken possession of before any rights accrued under the attachment proceedings, but does not show whether the accounts claimed by either of the two creditors were made before or after the execution of the mortgage. It is silent as to when the debts were created. The reasonable inference is that the mortgage was executed and on file before such debts were created, having been of record since January 27th, and the proceedings not begun until May 5th. In further considering the validity of the mortgage, it must be observed that this mortgage does not come within the rule applied to mortgages on stocks of merchandise which give the right to sell and replenish the stock, as this mortgage specifically provides that the mortgagor shall not sell or dispose of any of the property without written consent of the mortgagee, and that, if any of the property is sold or disposed of without such written consent, the mortgagee shall have the right to take immediate possession of the property covered. The mortgage appears to be valid on its face. It described the property as one stock of goods consisting of dry goods, groceries, canned goods, racket goods, flour, and feed, free and clear of any lien or incumbrance of any kind, located on lot 4, block 3, in the town of Maud, Okla.

Under the weight of authorities, such a description of a stock of goods is sufficient. *Nichols v. Bishop, supra;* Cobbey on Chattel Mortgages, secs. 155-188; Jones on Chattel Mortgages, sec. 65, and authorities cited. The mortgagee being in possession of the property under a valid mortgage and under circumstances which raised no legal presumption of fraud, the Bell-Wayland Company, being an attaching creditor, had a perfect right to subrogate itself to the rights of the mortgagee; and, having done so by satisfying the mortgage, the burden was not upon it to prove its right to the property.

The judgment should therefore be reversed, and the cause remanded.

By the Court: It is so ordered.