Foster *v.* Perkins.

THOMAS R. FOSTER & *al. versus* CHARLES PERKINS.

The delivery of a mortgage to the mortgagee, or his assent to it, is essential to perfect his title.

The delivery of a mortgage to the register, and its subsequent possession by · the mortgagee, are, in the absence of other controlling facts, sufficient evidence of the delivery of the instrument.

The date of a mortgage is *prima facie* evidence that it was then delivered.

The statutes of Maine make no distinction between resident mortgagees and those who are not.

Mere inconvenience, however great, in making the *tender*, as required by the Revised Statutes, c. 117, § 38, before mortgaged property can be attached, will not authorize a disregard of its plain provisions.

The statute of the United States of July 29, 1850, which provides for the recording of mortgages, &c. of vessels "in the office of the collector of the customs where such vessel is registered or enrolled," applies only to vessels which have been registered or enrolled at the time the mortgage is made.

Before such registry or enrollment of vessels, mortgages upon them are governed by the statutes of the State, relating to mortgages of personal property.

A., on different days, executed three mortgages of a vessel to B. The first two were executed before the registry or enrollment of the vessel, and were duly recorded by the town clerk. Before the vessel was registered or enrolled and the third mortgage executed and recorded in the collector's office, the vessel was attached : — *Held*, that the first two mortgages were valid and that the vessel could not be legally attached upon mesne process, without first paying or tendering the amount of · the mortgage debts in accordance with the provisions of the statute.

A mortgagee in all cases, where there is no language to the contrary in the mortgage, and no other agreement restraining or controlling him, has the right of entering into immediate possession of the mortgaged property.

A. gave a mortgage of a vessel to B., conditioned, among other things, that A. should retain possession of, and keep the vessel in New York for a certain period, for the purpose of selling her to liquidate the mortgage debt : — *Held*, that the right of possession by the mortgager was not of such a nature as to deprive the mortgagee of the right to take actual possession of the vessel as against a wrongdoer.

*Held*, also, that the mortgager was the agent of the mortgagee, and that he had a qualified possession for the mortgagee's benefit.

In such case, the mortgagee's right of possession is not affected, where the property is withheld from him by a trespasser.

ON REPORT from *Nisi Prius.*

This was an action of replevin for the bark Mary Lee,

which was built by Gilbert Balkam at Robbinston, during the year 1854.

The general issue was pleaded and joined, with a brief statement, alleging that the property belonged to the defendant, and was not the property of the plaintiffs; and that defendant justified as deputy sheriff, under the writ of *John G. Wetherell & als.* v. *Gilbert Balkam and William Pike, trustee.*

The plaintiffs relied upon a mortgage from Gilbert Balkam to them, dated July 26, 1854, and recorded at Robbinston, August 2d, 1854. Also upon another mortgage from Balkam to the plaintiffs, dated December 9th, 1854, and recorded at Robbinston, December 11th, 1854. Also upon a third mortgage from Balkam to said plaintiffs, dated December 27th, 1854, and recorded on the same day in the collector's office for the port of Passamaquoddy; and the register for said vessel was taken out of said office the same day.

The defendant, as deputy sheriff under B. W. Farrar, sheriff of Washington county, upon the 22d day of December, 1854, attached the said bark upon the above named writ.

The writ, *Wetherell* v. *Balkam and trustee,* was dated the 22d day of December, 1854, and was entered at the April term of the Court in 1855, was continued to the October term of the Court in 1855, when the trustee was discharged, and the defendant, Gilbert Balkam, was defaulted. The action has since been continued for judgment from term to term, and no part of the debt sued for in the same has been paid.

The bark Mary Lee was launched on the 14th day of December, 1854, and is the same vessel which, in different stages of construction, is mentioned in the several mortgages above described. Said mortgages were duly executed and recorded.

If the action can be maintained upon this state of facts, the defendant is to be defaulted; otherwise, the plaintiffs are to become nonsuit, and a return of the property ordered.

*F. A. Pike,* for plaintiffs.

The single question involved is, whether an attaching creditor shall take precedence of a mortgagee.

1. It appears from the mortgages that the plaintiffs supplied Balkam with means to build the vessel, and took mortgages on her in different stages of progress to secure themselves for advances made. The mortgages state an indebtedness for a large sum, and it is for the defendant to show that it has been discharged, proof of the execution and record of the mortgage being *prima facie* evidence of title in the plaintiffs. *Davis* v. *Mills*, 18 Pick, 394.

Under these circumstances, dates govern. As neither party claims by virtue of statute lien, it is a mere question of priority in time.

The plaintiffs' first mortgage is dated July 26, 1854, for $6000; recorded August 2, 1854. The second one is dated Dec. 9, 1854, for $9000; recorded Dec. 11, 1854. The attachment under which the defendant claims is dated Dec. 22, 1854.

The record in this case was made by the town clerk of Robbinston, the town in which Balkam resided at the time of the conveyance. The statute of the 31st Congress, chap. 27, 1850, of course contemplates only vessels that are registered or enrolled, and not those in the process of completion. A vessel on the stocks, or lying in harbor after launching, and before enrollment or registry, cannot be said to be a vessel of the United States. *Non constat* that she ever will become naturalized. She may be built for foreign use.

The object of that statute, taken together, seems only to be to have the custom house record show the exact state of the title. It provides that the portion of the vessel owned by each owner shall appear; and when this appears, any mortgage or other conveyance by either of them should also appear. The United States statutes of 1792 do not even oblige an owner of a vessel to register or enroll. The language of the statute is that it *may* be done. If the owners wish for the privileges appertaining to vessels of the United States, they must either enroll or register them. The evident purpose of the whole navigation law is to allow owners of vessels to enroll or register them; and if they do, the portion owned by

each part owner must appear, and where this is done, all subsequent mortgages or other conveyances must appear of record. They can use the record if they please; but in case they do so, every thing must appear; and until parties owning vessels have them surveyed by the custom house officer, and furnish their bonds, the United States law does not apply to them any more than it does to the ship timber and iron out of which they are made.

The state law was complied with while the vessel was in her inchoate state, and that was the only law applicable to her until the navigation laws took effect by her entry at the custom house.

2. It would be quite impossible to apply the United States law to vessels unregistered, without first determining what is a vessel. Is it when she is in frames, or half completed, or two-thirds finished, or entirely done? But when the proper officers measure and register her, then there is no further question. They may do this before the vessel is completed or after; and whenever it is done, whether the vessel be launched or not, the United States law takes effect, and not until then. In this case it does not appear in what state the bark was when the first mortgage was given. The mortgage states that Balkam was then building her. When the second mortgage was given, the vessel was more nearly complete. Either mortgage is good as a conveyance of materials; the same attached by the defendant in this case.

*George W. Dyer*, for defendant, contended:—

1. That the plaintiffs' right of action depends upon their title to property in the bark at the date of their writ; and that such title, if they have any, is only in the last mortgage, dated December 27th, 1854, and that the former mortgages were *merged* in the latest mortgage. *Jones* v. *Johnson*, 3 Watts & Serg. 276.

2. The plaintiffs, by taking the last mortgage, under the circumstances of the case, and for the reasons above stated, must be considered in law to have *waived* their rights under the prior mortgages. *Paul* v. *Hayford*, 22 Maine, 236.

3. If the above positions are correct in law, and upon prin-
ciple, then the plaintiffs cannot maintain this action, as they
had no right of possession on December 30th, the date of
their action, having by express contract parted with that right.
*Wheeler v. Train*, 3 Pick. 255 ; *Ingraham* v. *Martin*, 15 Maine,
373 ; *Pierce* v. *Stevens*, 30 Maine, 184.

4. By the agreement of parties, if the plaintiffs cannot
maintain their action, there is to be a return of the property.

5. If the Court should be of opinion, that the latest mort-
gage did not merge the others, and that they were, December
30th, valid and subsisting securities, then it is submitted, that
in the case at bar, it is not enough for plaintiffs to prove sim-
ply the execution and record of the two mortgages at Rob-
binston.

There must be proof of the delivery of the mortgage deeds
to the plaintiffs, or their agent for them, or the assent of plain-
tiffs before the attachment by defendant, and there is no such
proof; and the words "duly executed" in the statement of
facts, do not admit the delivery; and in *Davis* v. *Mills*, 18
Pick. 394, the point of delivery was not made.

*Non constat*, that because the plaintiffs had their deeds when
this case was drawn up, that there had been any delivery of
them by Balkam, at the date of Perkins' attachment, or be-
fore this action was commenced. *Jewett* v. *Preston*, 27 Maine,
400 ; *Witham & ux.* v. *Butterfield,* 6 Cush. 219 ; *Baird* v. *Wil-
liams*, 19 Pick. 381 ; *Maynard* v. *Maynard*, 10 Mass. 456 ;
*Bullock* v. *Williams*, 16 Pick. 33 ; *Dole* v. *Bodman*, 3 Met.
189 ; *Lamson* v. *Thornton*, 3 Met. 275.

The record of the two mortgages in Robbinston, was not,
as to the defendant, and the creditors of Balkam whom he
represents, sufficient, without an actual delivery of the bark,
and the keeping of her in possession.

The plaintiffs lived in New York, and it does not appear
that they had any agent in this State.

The statute makes provision for attachment of personal
property under mortgage, upon first making tender of the debt

due. In this case, tender became impossible, as there was no person to whom tender could be made.

If record is sufficient in all cases, it puts it into the power of parties here, to mortgage valuable property for a trifling sum, *bona fide*, to people in California, Calcutta, or any remote region, where tender would be impossible, and so to hold and use it in defiance of the rights of creditors.

It is, also, in like case, impossible to make demand on the mortgagee to state the amount of his mortgage claim, as provided in § 71, c. 114, Revised Statutes.

*Pike*, for plaintiff, in reply.

MAY, J.—At the time of the attachment under which the defendant claims, the title of the plaintiffs to the bark in controversy depended upon two mortgages from Gilbert Balkam to them, duly executed and recorded in the town of Robbinston, where the mortgager resided. The first was dated July 26, and the other Dec. 9, 1854, and both were given to secure large sums of money advanced, and to be advanced by the plaintiffs, and were upon the vessel then described as upon the stocks in Robbinston. No fraud is suggested in these transactions. The title of the plaintiffs must, therefore, be deemed valid, as against the attachment, unless some of the objections urged in defence can be sustained.

It is said, in the first place, that it does not appear that these mortgages had been delivered or assented to by the plaintiffs prior to the attachment. That such delivery was essential to perfect the title in the plaintiffs, cannot be denied. It is said, by SHAW, C. J., in *Davis* v. *Mills*, 18 Pick. 394, that "proof of the execution and registry of the mortgage is *prima facie* evidence of title in the plaintiff." Its delivery to the register, and its subsequent possession by the grantee, is evidence of a delivery to him. *Maynard* v. *Maynard & al.* 10 Mass. 456. In the cases cited by the counsel in defence, upon this point, there was more or less in the facts proved, tending to control the inference arising from registry and subsequent possession. In the case at bar no such facts appear.

The possession of the mortgages is therefore sufficient evidence of delivery. Their date is *prima facie* evidence that they were then delivered. *Sweetser* v. *Lowell & al.*, 33 Maine, 446.

It is also contended that the registry of a mortgage of personal property under our statutes is not equivalent to possession of the property by the mortgagees, where they reside out of the State. The statute makes no distinction between citizen mortgagees, and those who are not. No case is cited to sustain any such distinction. Mere inconvenience, however great, in making a tender before the mortgaged property can be attached, as now required by the Revised Statutes, c. 117, § 38, will not authorize the Court to disregard any of the plain provisions of the statute, or their effect. We must declare the law as it is. If inconveniences exist, it is for the Legislature to remove them, and not for the Court.

Again, it is urged that the first two mortgages, under which the plaintiffs claim, are void as against attaching creditors, whom the defendant represents, because they were not recorded in the office of the collector of the customs, as required by the statute of the United States, passed July 29, 1850, vol. 9, c. 27, § 1. By this statute it is provided, " that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, shall be valid against any person other than the grantor, or mortgager, his heirs and devisees, and persons having actual notice thereof; unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled." The section contains a proviso which it is unnecessary to recite. This statute clearly, by its terms, applies only to vessels which have been registered or enrolled at the time when the instrument or mortgage is made; or to cases where the title to the vessel, which is set up against such instrument or mortgage, was derived after such registry or enrollment of the vessel and before the required record had been made.

In the case at bar, the vessel had been neither registered

nor enrolled, when the attachment was made, but was probably lying at the wharf in the river, having been launched only eight days before. Under such circumstances, we cannot doubt that she was subject to our laws, and that the state of the title at that time is properly to be determined in view of our statute relating to mortgages of personal estate. R. S., c. 125, § 32, as amended in 1852, c. 262. As to what would be the effect of the federal statute, before cited, upon the rights of attaching creditors, in the case of a mortgage not recorded as it requires, the mortgage or attachment being made after the registry or enrollment of the vessel, we intend to give no opinion.

It is also said, that the first two mortgages, held by the plaintiffs, became merged in the mortgage of Dec. 27, 1854, given to the plaintiffs, by the same mortgager, upon the same vessel, then afloat, and for the purpose of securing the same debt. Assuming, without intending to admit that such is the fact, that the previous mortgages were merged or extinguished in the last, and that the plaintiffs had waived their rights under them, still, it is not perceived how the attachment made by the defendant, five days before, could be made effectual thereby. At that time there had been no merger, and the vessel being then subject to the first two mortgages could not, as against the mortgagees, under our Revised Statutes, c. 117, § § 38 & 40, as amended by the statute of 1842, c. 31, § 12, be legally attached upon mesne process, without first paying, or tendering, the full amount of the mortgage debt then due. *Smith* v. *Smith,* 24 Maine, 555. The attachment being void as against the plaintiffs, it could give to the defendant no right to hold or retain the bark, as against them. *Morton's adm'r* v. *Hodgdon,* 32 Maine, 127.

Another, and perhaps the strongest objection to the maintenance of this action, is, that the plaintiffs, even if they had the right of property, had not the right of immediate possession at the time when the suit was commenced. The validity of this objection rests upon the correctness of both the law and the fact which it assumes. The law is undoubtedly cor-

rect. It has been so often decided to be so, that authorities are unnecessary to sustain it. But the fact, as to the right of immediate possession, is more difficult to determine.

Whether the plaintiffs possessed such a right, depends upon the construction and effect of the mortgage of Dec. 27, 1854. That mortgagees of both real and personal estate, in all cases where there is no language in the mortgage, and no other agreement to restrain or control it, possess the right, is well settled. *Sibley* v. *Cushman*, 29 Maine, 429; *Welch* v. *Whittemore & al.* 25 Maine, 86; *Wales* v. *Mellen*, 1 Gray, 512. But an agreement that the mortgager shall retain the possession of the mortgaged property, either absolutely or conditionally, may be, and often is, to be inferred from the stipulations which the mortgage contains. The first two mortgages contain no such agreement, express or implied. By the third or last mortgage, it is in substance provided in the condition, that the mortgager shall pay or cause to be paid to the plaintiffs, the full and just sum of eighteen thousand dollars within or at the expiration of sixty days from its date; that he shall keep the said bark in the port of New York until the mortgage is satisfied; and that, in case of a sale of the bark before the expiration of the sixty days, the mortgage shall be paid before any transfer shall be made. If the money is paid by the time specified, then the mortgage is to be void; but if default shall be made in this or in the fulfillment of the other aforementioned conditions, then the mortgagees are authorized and empowered, at any time and place thereafter, to enter upon and take possession of the bark, and make a sale thereof; and for that purpose, they are, by a subsequent clause in the mortgage, constituted and appointed to be the true and lawful attorneys of the mortgager. From these provisions, the right of the mortgager to retain the possession of the vessel, until a breach of some of the conditions, is fairly to be implied; but it is for no other purpose than that of keeping the vessel in the port of New York, and making a sale of her, for the payment of the mortgage debt. Such a sale is manifestly the great design of the parties in the mortgage. It does

not seem to have been contemplated that either party should use the vessel until the mortgage should be paid, except so far as might be necessary to place her in New York as a market for sale. This, the mortgager was bound to do, without any unreasonable delay. Under such circumstances, we do not think that the right of possession retained by the mortgager was of such a nature as to deprive the plaintiffs of the right to take actual possession as against a wrongdoer. The mortgager may properly be regarded as the agent of the mortgagees, and his possession was a qualified possession for their benefit. This case is unlike those of *Wheeler* v. *Train*, 3 Pick. 255, *Ingraham* v. *Martin*, 15 Maine, 373, and *Pierce* v. *Stevens*, 30 Maine, 184, cited in defence. In all these, and many more that might have been cited, it will be found that there was a beneficial use of the property secured to the lessee, or mortgager, of which they could not lawfully be deprived.

This case is substantially like that of *Melody* v. *Chandler*, 12 Maine, 282, where the plaintiff claimed under a mortgage bill of sale, which contained a stipulation that the mortgager should retain the possession of the goods mortgaged, for the purpose of making a sale of them, and in which it was held that the possession of the mortgager was the possession of the mortgagee. The only distinction perceived between the two cases, is, that the latter is an action of trover, while this is replevin; and in the case cited, the mortgage contained a provision that the proceeds arising from the sale should be appropriated to the payment of the mortgage debt, whilst in this, the mortgage is without such a stipulation, and yet it cannot well be doubted that the object of the sale contemplated was for that purpose. We do not think that these circumstances change the law of the case, or that the plaintiff's right of possession, in a case where the property is withheld from him by a trespasser, is affected thereby.

At the time when the last mortgage was made, the vessel was afloat, and in the hands of the defendant, as it may reasonably be inferred from the two facts, that he had taken possession of her five days before, under color of an attach-

ment, as the property of the mortgager, and that she had not then been replevied. The mortgager, therefore, had not been in possession of her after the mortgage was executed, and before she was replevied. This possession by the officer, permitted by the mortgager, effectually deprived him of all power to fulfill the conditions of the mortgage as he had agreed. The case shows an entire want of diligence on his part to obtain the possession during the time which elapsed after the mortgage was made, and before the inception of this suit. Such possession, by the defendant, and the want of due diligence, we think, amount to a breach of that condition in the mortgage, which required the mortgager to keep the bark in the port of New York; and from these facts we may properly infer an abandonment on his part of all intention to perform it.

This, by the express provisions of the mortgage, restored the plaintiffs to the right of immediate possession, and therefore authorizes the maintenance of this suit. *Whitney* v. *Lowell,* 33 Maine, 318.                    *Defendant defaulted.*

TENNEY, C. J., and APPLETON, J., concurred in the result. HATHAWAY and GOODENOW, J. J., concurred.