## BAILEY v. WILLOUGHBY *et al.*

No. 1666.   Opinion Filed May 14, 1912.

Rehearing Denied June 18, 1912.

(124 Pac. 955.)

**JUDGMENT—Notwithstanding Verdict—Garnishment of Mortgaged Property—Tender of Amount Due.** Where a summons in garnishment issued upon a judgment against R., and was served upon B., who answered, in effect, that he was not liable in garnishment, and where issue was joined thereon pursuant to Comp. Laws 1909, sec. 5718, and where the case turned upon the question of whether three bills of sale of even date theretofore executed by R. to J. and duly filed for record, were intended to evidence an absolute sale of six elevators from R. to J. which he had leased and of which B. was in possession as agent of the lessee, were intended to evidence a sale or were each in effect a mortgage, and the jury found that such they were, and where it further appeared that before the service of the summons in garnishment the conditions prescribed by Comp. Laws 1909, sec. 4432, were not observed, **held,** that defendant's motion for judgment **non obstante** on that ground should have been sustained.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by J. W. Willoughby, receiver, against J. C. Robb. Judgment for plaintiff, writ of garnishment issued against J. R. Bailey and Bailey brings error.   Reversed and rendered.

*C. J. Wrightsman, C. E. Bush,* and *Victor O. Johnson,* for plaintiff in error.

*Flynn, Ames & Chambers,* for defendants in error.

TURNER, C. J.   On January 7, 1905, J. A. Willoughby, as receiver of the Capitol National Bank of Guthrie, sued J. C. Robb, defendant in error, in the district court of Oklahoma county, and on January 18, 1905, recovered judgment against him by confession for $30,000.   On May 3, 1905, execution issued thereon, and an affidavit of garnishment was filed, alleging, among other

things, that said execution had issued, and had not been returned. On May 7, 1905, J. R. Bailey, plaintiff in error, was served with summons, and on the 9th answered, in effect that he was not liable to garnishment, upon which issue was joined as provided by Comp. Laws 1909, sec. 5718. By this proceeding it was sought to reach six elevators which it appears Robb had mortgaged to one J. Rosenbaum as security for a loan of $15,000, and which he had leased to J. Rosenbaum Grain Company, which had employed Bailey and placed him in charge. Neither the grain company nor Rosenbaum were parties, and Robb was not served with garnishment summons. The case was made to turn upon the question of whether the three bills of sale of even date, theretofore executed by Robb to Rosenbaum, and duly filed for record and known as Exhibits C, D, and E, reciting a consideration of $17,400, were intended to evidence an absolute sale of the six elevators therein described, or whether they were given as security for a loan, and were in fact a mortgage or mortgages. There was trial to a jury, which, in effect, found for plaintiff on this issue, and that the bills of sale were mortgages. Whereupon the court rendered judgment for plaintiff to that effect, and ordered that he take possession and sell the mortgaged property, and out of the proceeds first pay the mortgage debt, and turn the balance over to plaintiff in satisfaction of his judgment. After motion for a new trial filed and overruled, defendant, as garnishee, brings the case here.

It is contended that the court erred in overruling defendant's motion for judgment *non obstante*. Such was error. This proceeding was prosecuted upon the theory that, if plaintiff proved each of the three bills of sale in question to be a mortgage, he would be entitled to prevail and subject Robb's equity in the property to the payment of his judgment. As evidencing this theory, the bills of sale being, in terms, in effect the same, the court charged:

"The court instructs you that this bill of sale on its face indicates an absolute sale and transfer of all the right, title, and interest in this property from Mr. Robb to Mr. Rosenbaum, and, if there were no explanation of the transaction, it would be so construed, and is construed, outside of any explanation that has been

made concerning it, as an absolute sale and transfer of all the interests of the defendant Robb to Mr. Rosenbaum, but the court further instructs you that, notwithstanding the fact it may have been upon its face evidence of an absolute sale, yet the mere form of the instrument of conveyance is not conclusive by any means as to the nature of the transaction, and if it was really intended as a security for the payment of a debt, rather than an absolute sale, may be proven upon the trial, and, if the evidence is satisfactory to the jury that that was the nature of the transaction, then the verdict of the jury in this case should be that the transaction was in fact a loan, with security taken in the form of a bill of sale, and not an absolute sale of the property. That is the only question for you to pass upon."

And the jury found:

"We, the jury drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find for the plaintiff and against the garnishee, J. R. Bailey, and that the three bills of sale, copies of which were introduced in evidence as plaintiff's Exhibits C, D, and E, were intended at the date of their execution as mortgages securing the repayment of a loan of $15,000, within three years from their date, by the defendant J. C. Robb to one J. Rosenbaum, and were not intended as evidence of an absolute sale of said property by the said defendant J. C. Robb to said J. Rosenbaum, and that at the date of the service of the garnishee summons herein said property was in the possession and under the control of the garnishee, J. R. Bailey."

And the judgment recited:

"That the three bills of sale made by said J. C. Robb to J. Rosenbaum on the 17th day of April, 1904, was not a *bona fide* sale of said personal property described in said bills of sale but was a mortgage only, securing the payment of fifteen thousand dollars ($15,000) advanced to J. C. Robb by the said J. Rosenbaum, and that the said fifteen thousand dollars ($15,000) is an equitable lien upon said property, and should be paid out of the proceeds of the sale of said property as hereinafter provided prior to the payment of the garnishment lien of the plaintiff herein."

Assuming the validity of the judgment on which the summons in garnishment issued, and that all parties in interest were before the court, the judgment complained of is contrary to law, and the motion for judgment *non obstante* should have been sustained. This for the reason that the statute provides:

"Sec. 4431.   Property May be Attached.—Personal property mortgaged may be taken under attachment or execution issued at the suit of a creditor of a mortgagor.

"Sec. 4432..   Mortgagee's Rights—Creditor Subrogated— When.—Before the property is so taken the officer, on execution, or attachment creditor, must pay or tender to the mortgagee, the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee.   In the event that the attachment or execution levied on such property is defeated or for any reason fails, and the attachment or execution lien is held not good. and such deposit has been made with the county treasurer, the party procuring the issuance and levy of said attachment or execution shall be subrogated to all rights of the mortgagee in and to said property."

This payment was not made or tendered to the mortgagee or deposited with the county treasurer payable to his order.

In *Dodder et al. v. Moberly*, 28 Okla. 334, 114 Pac. 714, Shive interpleaded and claimed the attached property by virtue of a chattel mortgage thereon, executed and delivered to him by defendant to secure a debt, filed for record prior to the time the order of attachment came into the hands of the sheriff for service.   The issue joined raised the priority of his lien.   The court said:

"On the part of Shive, the interpleader, it is contended that the court erred in overruling his motion to dissolve the attachment, made after the jury had by their verdict sustained his interplea.   In this we concur.   On the coming in of the verdict, the jury, in effect, having found that the attached property was covered by the prior mortgage of Shive, that neither plaintiffs nor the sheriff, before levying the writ, had paid or tendered to him the amount of the debt and interest thereby secured, or deposited said money with the county treasurer to his order, as provided by Comp. Laws 1909, secs. 4431, 4432, it was the duty of the court *sua sponte* (18 En. Pl. & Pr. 431) to dissolve the attachment, order the property returned, and tax plaintiffs with the cost of the attachment and the cost of the interplea.   This for the reason that, as Shive had a prior lien on the property, the plain letter of the statute was violated by the levy.   *Ellis v. Smith*, 25 Okla. 234, 105 Pac. 653; *Moore v. Calvert et al.*, 8 Okla. 358, 58 Pac. 627."

In *Dix v. Smith*, 9 Okla. 124, 60 Pac. 303, 50 L. R. A. 714, the court said:

"At common law, the equity of a mortgagor in property could not be attached; but by the statutes of several of the states this rule has been changed, so that the interest of a mortgagor in chattel property may be attached, garnished, or seized and sold under execution. This, however, can only be done by statutory permission. At common law, the legal title was, by the mortgage, vested in the mortgagee, and this title became absolute upon default. The mortgagor only had the equity of redemption, nothing more. The Supreme Court of Massachusetts, in the case of *Badlam v. Tucker,* 1 Pick. [Mass.] 399 [11 Am. Dec. 202], in speaking of the right to attach mortgaged personal property, said: 'A mere equitable interest cannot be taken and sold on execution; for, where there is no legal right, there is no legal remedy. This was settled on great deliberation by the court of King's Bench in the case of *Scott v. Scholey,* 8 East, 467; and the reasons there given are entirely satisfactory. The judgment of the court in that case was sanctioned by the court of common pleas in the case of *Metcalf v. Scholey,* 2 Bos. & P. (N. R.) 461, and is supported by all of the authorities. It is only by statute that equities or rights to redeem are subject to attachment by ordinary process, and no statute has authorized the attachment of such interest in personal property. A creditor can reach such interest of his debtor only by resorting to a court of equity, where he may be let in to redeem incumbrances.' The same court, in *Prout v. Root,* 116 Mass. 410, said: 'At law, and without statute intervention, the interest of the mortgagor is not liable to be taken on execution, because it is a mere equitable interest, and where there is no legal right there can be no legal remedy.' *Cochran v. Rich* [142 Mass. 15], 6 N. E. 781, also holds that the interest of a ·mortgagor in property mortgaged cannot be attached, and this rule of the common law has been enacted into statute in this territory."

Speaking to a similar statute in *Souza v. Lucas et al.* (Cal. App.) 100 Pac. 115, in the syllabus it is said:

"Civ. Code, sec. 2969, providing that, before mortgaged chattels may be taken under an attachment, the officer must pay or tender to the mortgagee the amount of the mortgage debt and interest, or deposit the amount thereof, etc., measures the power of the officer in effecting a legal attachment; and, when the conditions are not observed, the writ affords no justification, and neither the officer nor the creditor acquires any lien on the property."

See, also, *William Deering Co. v. Warren,* 1 S. D. 35, 44 N. W. 1068; *Mabry v. Metropolitan Trust Co.,* 94 Ga. 619, 21 S. E. 589; *Foster v. Perkins,* 42 Me. 168.

The cause is reversed and rendered.
All the Justices concur.