## BEATRICE CREAMERY CO. v. GOLDEN et al.

No. 17878. Opinion Filed Jan. 24, 1928.

(Syllabus.)

1. Execution—Invalidity of Levy on Mortgaged Personalty Without Paying Mortgage Debt.

Where an execution is levied upon personal property upon which there is an unpaid mortgage of record securing promissory notes and certain open accounts, which notes and accounts are past due, the accounts being held by one intervener and the notes by a second intervener, and where the proof introduced without objection clearly shows that neither the plaintiff nor the levying officer made any payment or tender of payment of such mortgage or security, as provided by C. O. S. 1921, sec. 7661, it is not error for the court to quash the levy and release the property.

2. Chattel Mortgages—Lien of Assignee of Part of Mortgage Debt.

A chattel mortgage is a mere incident of the debt which it secures, and an assignment of a distinct portion of such indebtedness carries with it a pro tanto interest in the

mortgage and a lien in common to the extent of the respective interests.

3. **Same—Execution — Levy on Chattels Purchased by Mortgagee—Invalidity Where Amount of Mortgage Debt not Tendered.**

Where a party purchases and takes an assignment of a distinct part of an indebtedness secured by a chattel mortgage, and later on the same day, purchases from the mortgagor the mortgaged property, and where, about two months thereafter, an execution is levied against the property under the claim that there was not sufficient change of possession to validate the sale as against the execution creditor, it was not error for the court to hold that said purchaser was either a mortgagee, in effect, or the owner of the property, and that in either event he had the right to rely upon his motion and interplea directed at plaintiff on the ground that neither plaintiff nor the levying officer had paid or tendered payment of said chattel mortgage under the provisions of section 7661, C. O. S. 1921.

Commissioners' Opinion, Division No. 2.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Plaintiff, eBatrice Creamery Company, caused an execution to issue against its judgment debtor, C. E. Golden. Levy was made upon an automobile truck; L. S. Smyers, interpleader, claiming the property and claiming the levy was illegal. Later Childers oMtor Company interpleaded as mortgagee. The court held that mortgage to Childers Motor Company on the truck was unpaid and of record, and that no payment or tender of payment had been made under section 7661, C. O. S. 1921, and the levy was quashed. Appeal by plaintiff. Affirmed.

Markley & Neece, for plaintiff in error.

Robert J. Bell and W. H. Moore, for defendants in error.

BENNETT, C. On February 27, 1926, Beatrice Creamery Company recovered judgment against C. E. Golden in the district court of Pittsburg county for the sum of $935.60. Execution thereon was issued to the sheriff, who levied said writ upon a certain Graham Brothers truck, 1925 model. A few days thereafter, L. S. Smyers filed his motion and interplea, claiming the truck levied upon by virtue of a purchase from the defendants on February 8, 1926, prior to the rendering of the judgment against defendants. The interplea alleges that the execution was wrongfully issued and wrongfully and unlawfully levied upon said property, and moves the court that the said execution be quashed and released, and for other proper relief. A few days after the interplea of Smyers, Childers Motor Company filed its interplea, claiming to be the owner and holder of a certain chattel mortgage executed by C. E. Golden covering the truck aforesaid, and securing $1,009.68, represented by notes maturing monthly and future advances due by the mortgagor to the mortgagee, whether by note or account. This interpleader claims a balance due it under the mortgage of $168.-84. A copy of the mortgage and a verified account showing balance due is attached to this interplea. This mortgage was properly filed for record September 25, 1925. The interplea alleges that said sum of $168.84 had not been paid or tendered to the mortgagee prior to the levy of said execution, and asks that the truck be released from the levy. To this interplea plaintiff filed general denial. The answer of plaintiff to motion and interplea of Smyers is: First, a general denial; second, plaintiff admits he caused the sheriff to levy execution on the Graham truck; third, he denies that the truck is the property of the interpleader, denies that he purchased same in good faith; that the sale from Golden to Smyers was void under section 6021, C. O. S. 1921, and that if Smyers had any interest in the truck, he is estopped to assert same by reason of the fact that he allowed the truck to be registered in the name of C. E. Golden.

After the levy and the filing of interplea of L. S. Smyers, there was filed a bond in the sum of $800 to secure the release of the property from execution. This bond sets out that said Smyers has filed his interplea, claiming he is the owner of said truck, and asking the court to release the said truck from the levy and to declare that Smyers is the owner and entitled to the possession of the property. The bond is further conditioned:

"That if the said Smyers shall fail to show his right to the possession of said property superior to the rights of this execution creditor, and should the said L. S. Smyers upon the order of the court fail to redeliver to said sheriff said truck * * * then the said L. S. Smyers shall pay all damages suffered by reason of such failure."

This bond is signed by L. S. Smyers and two sureties. A jury having been waived, the two interpleas were tried together to the court, who finds in his journal entry:

"From the evidence that the execution should be quashed, and interpleader. L. S. Smyers, is entitled to possession of said property, the truck levied upon as the property of C. E. Golden. The court further finds that the Childers Motor Company at the time of said levy held and now holds a

mortgage on said property securing the items on its open accounts subsequent to September 25, 1925, in the sum of $61.70."

Plaintiff's motion for new trial sets out two grounds: (1) That the decision of judgment is not sustained by sufficient evidence and is contrary to law. (2) Errors of law occurring at the trial and excepted to by the plaintiff. In his specifications of error, the plaintiff in error sets out six grounds, but in its argument it treats them under one head.

Smyers testified in substance that on February 8th he bought for face value and interest from Childers Motor Company the unpaid notes described in the mortgage attached to the Childers interplea, paying therefor approximately $750; that the notes were indorsed by Childers Motor Company without recourse and delivered to him; that he purchased the notes for the purpose of allowing defendant to take the truck out of the state, the Childers Motor Company having declined to permit the removal of such car; that later on, the same day, he bought from defendant the car for $1,200, which was paid by giving defendant credit of $300 on a prior indebtedness and paying balance in cash after deducting $750 for the Childers note; that the next day he and defendant started to Florida; that he was unable to drive and employed the defendant to go with him and drive the car, paying him $5 per day for his services; that they went to Florida for the purpose of doing hauling with the truck; that they found conditions in Florida, when they arrived, very unfavorable; they did some hauling there of building material, bricks, etc., but soon got out of work; he paid Golden $5 per day for running the truck, but the witness was also with the truck and helping in the work; that they remained in Florida six or eight weeks, then drove back to Oklahoma. Upon arrival in Oklahoma he had only one place for a car and that was used by the small car of his daughter, and so he had Golden, who lived two or three blocks away, take the truck over to his home and keep it for a day or so in the garage. On the second day it was seized.

The purchase of the notes by Smyers was corroborated in detail by B. F. Childers, the president of Childers Motor Company. It was shown that Smyers mortgaged his land in order to secure the money to buy the notes, and from the evidence there is no attempt to dispute the purchase of these notes, or to deny that they were bought for full value and in good faith by Smyers. But it is contended that Golden remained in pos-

session of the truck. There is offered in evidence also a bill of sale for the truck executed by Golden to Smyers on the date that he purchased the notes. The evidence as to amount due Childers Motor Company was not contradicted. When the evidence was concluded, the court sustained the interpleas and quashed the execution upon the theory: First, that at the time of the levy Smyers was the owner of the truck; or, second, that if the change of possession were insufficient to comply with the statute, then said Smyers had a mortgage lien on said truck by virtue of the assignment of said notes from the Childers Motor Company; and, third, that under our statute, before an execution can be levied on personal property covered by chattel mortgage, the mortgage indebtedness must be paid or tendered to the mortgagee; that the Childers Motor Company held a mortgage on the truck securing the advances since the execution of the mortgage pleaded in the sum of $61.70, which had been neither paid nor tendered.

In deciding the case the court said ·

"Conceding that this conveyance is not valid, yet, if that were true, then the mortgage would be alive and in the hands of Smyers, for he put his money into it and the court holds he did put his money into it."

Section 7660, C. O. S. 1921, says:

"Personal property mortgaged may be taken under attachment or execution issued at the suit of a creditor of a mortgagor."

But section 7661, Id., prescribes the conditions as follows:

"Before the property is so taken the officer, on execution, or attachment creditor, must pay or tender to the mortgagee the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee. In the event that the attachment or execution levied on such property is defeated, or for any reason fails, and the attachment or execution lien is held not good, and such deposit has been made with the county treasurer, the party procuring the issuance and levy of said attachment or execution shall be subrogated to all rights of the mortgagee in and to said property."

There is no question as to the validity of the original mortgage by Golden to the Childers Motor Company, which, upon its face, appears to have been made to secure in part the purchase price of this truck. There is no dispute as to the fact that, later on and before this execution was levied, Smyers bought and took an assignment of the $750 worth of the notes from the Childers Motor

Company secured by this mortgage, and the evidence discloses that the only reason that the mortgage was not assigned was that the same covered other indebtedness in addition to the notes, and that Smyers did not have sufficient money to pay the entire indebtedness. So that the least that can be said is that Childers and Smyers held obligations secured by this mortgage made by Golden covering this truck, and each had a right to look to the protection of the mortgage to assure the payment of so much of the indebtedness against Golden as he then held. Miller v. Campbell Commission Co., 13 Okla. 75, 74 Pac. 507; Wendling v. Aurelius-Swanson Co., 106 Okla. 63, 232 Pac. 932. Putting aside, for the moment, any purchase or attempt to purchase the truck by Smyers, he was a mortgagee to all intents and purposes, as was Childers Motor Company. Under the plain provisions of the statute above referred to, neither the plaintiff nor the sheriff had any right to levy an execution upon this mortgaged property without first having complied with the statute by paying the amount of this mortgage direct to 'those entitled, or paying it to the county treasurer under the statute for their benefit. A levying officer is guilty of conversion if he takes the property from mortgagor without payment or tender of mortgage debt as required by statute. Keith v. Haggart, 4 Dak. 438, 33 N. W. 465.

In the case of Moore v. Calvert, 8 Okla. 358, 58 Pac. 627, the court holds in the third syllabus as follows:

"The liens created, respectively, by mortgage and execution on the same chattels, are essentially different, and cannot co-exist. Before the lien of an execution can attach, the officer must pay off or tender the amount of any existing mortgage liens, or deposit the amount of the mortgage debt with the county treasurer, for the use of the holder of the mortgage."

Paragraph 4 of the same syllabus:

"A mortgagee of chattels, who has taken possession of the mortgaged property for the purpose of foreclosure, cannot waive the right to have the mortgaged debt paid or deposited with the county treasurer, so as to make effective the levy of an execution, without delivering possession of the property to the officer, and waiving the lien of his mortgage."

Judge Burford, delivering the opinion of the court in this case, at page 364, uses these words:

"In the case of Wilson v. Felthouse, 57 N. W. 878, the Supreme Court of Iowa, in construing a statute identical with ours, held that the provision requiring payment, ten-der, or deposit of the mortgage debt was for the sole benefit and protection of the mortgagee, and if he waived this right, and consented to a levy subject to his lien, other parties in interest could not object. This position is not supported by any other authorities."

At any rate, it will be immaterial here, for certainly neither the motor company nor Smyers has waived any of their rights in this proceeding to their mortgage lien. It should be noted that section 7661, supra, makes no exceptions. It says in plain words, "before the property is so taken (under execution) the officer, * * * or * * * creditor, must pay or tender to the mortgagee the amount of the mortgage debt and interest, or must deposit the amount thereof with the county treasurer, payable to the order of the mortgagee." The statute evidently means exactly what it says. That was a condition precedent to the right to levy upon this property.

The court in the last-named case says:

"The purpose of requiring an execution or attaching creditor to pay off a prior chattel mortgage before levying on the mortgaged property is to enable the creditor to reach the interest of the mortgagor without disturbing the rights of the mortgagee, and, strictly speaking, in law the legal effect is to discharge the mortgage lien. Neither the holder of such a mortgage, nor the execution creditor who made the payment, tender, or deposit, could foreclose such mortgage in the manner provided by statute for enforcing the rights of a mortgagee."

In the case of D. M. Osborne & Co. v. E. Hughey, 14 Okla. 29, 76 Pac. 146, the court says in paragraph 1 of the syllabus:

"Every court has the inherent power to control its own process, and where the return on an execution shows that the same has not been made in accordance with law, and is in violation of the express terms of the statute, authorizing the issuing and levy on said execution, the court from which such execution issued has the power to vacate, set aside or cause such return to be corrected."

The court says at page 32:

"Now the question to be determined is whether with these mortgages standing, uncanceled of record, the action of the sheriff, as shown by the return, was such as to create a legal lien by virtue of his levy under the execution."

Here the court quotes sections 3587 and 3588 of Wilson's Statutes 1903, which are, in substance, the same as sections 7660 and 7661, C. O. S. 1921, and further the court says:

"As a general proposition it is, good

grounds for quashing a return when it is not made in accordance with the law, or where the officer who made it was disqualified, or where the levy was made prematurely. * * * Where the method of making the levy is prescribed by statute it is the duty of the officer making the levy to proceed in strict accordance with the statute, and if he does not do so the levy may be set aside, or he may be made to respond in damages to any one whom he has injured by his neglect." (Citing 8 Enc. Pl. & Pr. 504; Litchfield v. Cudworth, 15 Pick. [Mass.] 32.)

On page 33 of the Osborne Case, supra the court says:

"When the officer failed or neglected to pay or tender the amounts due upon these mortgages, which might readily have been ascertained by an examination of the record, the levy of the execution was illegal, and no execution lien attached, as against the rights of these mortgagees, and the legal holder thereof. * * * The act of the sheriff in making the levy without complying with the requirements of the statute, made such levy premature. Hence, we think the action of the probate court in sustaining the motion to vacate the return, and quash the levy, was in strict accordance with the law, and should be affirmed, which is hereby done accordingly."

In the case of Ellis, Sheriff, v. Smith, 25 Okla. 234, 105 Pac. 653, at page 237, there is quoted with approval from Crismon, Sheriff. v. Barse Live Stock Commission Co., 17 Okla. 117, 87 Pac. 876, the following from the syllabus:

"The rights of a mortgagee to the possession of personal property covered thereby are superior to those of a sheriff who claims under a writ of attachment, sued out at the instance of another creditor of the mortgagor and levied on the property after the filing of the mortgage for record in the office of the register of deeds of the county; the attaching creditor not having paid off the mortgage or deposited the amount thereof as required by the statute."

The case of Bailey v. Willoughby, 33 Okla. 194, 124 Pac. 955, discusses this doctrine very clearly and quotes with approval from Dodder v. Moberly, 28 Okla. 334, 114 Pac. 714, as follows:

"On the part of Shive, the interpleader, it is contended that the court erred in overruling his motion to dissolve the attachment, made after the jury had by their verdict sustained his interplea. In this we concur. On the coming in of the verdict, the jury, in effect, having found that the attached property was covered by the prior mortgage of Shive; that neither plaintiffs nor the sheriff, before levying the writ, had paid or tendered to him the amount of the debt and interest thereby secured, or deposited said money with the county treasurer to his order, as provided by Snyder's Stats. of Okla. of 1909, secs. 4431, 4432, it was the duty of the court, sua sponte (18 En. Pl. & Pr. 431), to dissolve the attachment, order the property returned, and tax plaintiffs with the cost of the attachment and the cost of the interplea. This for the reason that, as Shive had a prior lien on the property, the plain letter of the statute was violated by the levy." (Citing Ellis v. Smith and Moore v. Calvert, supra.)

In Sousa v. Lucas (Cal. App.) 100 Pac. 115 in the syllabus, it is said:

"Civ. Code, sec. 2969, providing that, before mortgaged chattels may be taken under an attachment, the officer must pay or tender to the mortgagee the amount of the mortgage debt and interest, or deposit the amount thereof, etc., measures the power of the officer in effecting a legal attachment; and, when the conditions are not observed, the writ affords no justification, and neither the officer nor the creditor acquires any lien on the property."

See, also, William Deering Co. v. Warren, 1 S. D. 35, 44 N. W. 1068; Mabry v. Metropolitan Trust Co., 94 Ga. 619, 21 S. E. 589; Foster v. Perkins, 42 Me. 168.

Nothing else appearing, therefore, it was the plain duty of the court, under these decisions, to hold that the execution should be quashed and released, but the plaintiff in error cites the cases of Alexander v. Alexander, 65 Okla. 105, 164 Pac. 114; Berry v. White Sewing Machine Co., 32 Okla. 446, 122 Pac. 715; Bank v. Evans-Snyder-Buel Co., 9 Okla. 353, 60 Pac. 249, and Case v. Steele, 34 Kan. 90, 8 Pac. 242, and contends from the holding in these cases that the two interpleaders are prevented and estopped from setting up any irregularity or illegality in the levy of the execution and base the argument upon the fact that a bond was given by L. S. Smyers, J. M. Walls, and S. H. Neiswander in the penal sum of $800 to secure the release of the truck from the execution levy. This bond provides that, whereas, L. S. Smyers has filed his interplea claiming that he is the owner of the property and asking this court to try the title and ownership of said truck, and that the court released the same from the execution levy, and the bond further provides that if the said Smyers shall fail to show his right to the possession of said property superior to the rights of the execution creditor, he will pay all damages resulting from such failure. This was not a statutory bond for redelivery, but was a common-law bond, and on account of this bond the property was delivered to

Smyers. By its very terms he claimed the ownership of the property and claimed that the levy upon the same was unlawful and without right. Can it be possible that the interpleader estopped himself by giving this bond? Estoppel is based on the doctrine that some fact is asserted or condition admitted in the course of the litigation and on which the opposing party has relied, and, therefore, it would be inequitable for the party making the admission to assume a contradictory position. No such condition exists here. In this bond Smyers claimed title and denied the title of defendant, and also denied the legality of the levy. However irregular the giving of the bond may have been, and whatever rights may have accrued under it, he is not asserting now anything which he did not assert in the very face of that instrument, nor is he taking a position which is inconsistent with the very terms of the bond.

We might stand on this position; but there is the further fact in this case that the Childers Motor Company was likewise an interpleader. They were not a party to this bond, either as principal or surety. They were likewise mortgagees; in fact, the mortgage of record showed entirely in their name. So that there could have been no estoppel as against them in any conceivable way. With this in mind the situation may be reflected in the simple statement that the levy of the sheriff, if invalid the moment it was made, remained invalid. If the payment or tender of the amount of the mortgage debt was, in fact, a condition precedent, this levy could not have been valid at the time it was made, for the money was neither paid nor tendered. This fact was made known to the court immediately and without objection by the proof in the case, and, therefore, it became the duty of the court to strike down the levy. It cannot be argued that only the Childers Motor Company can make this contention; for Smyers was either interested in this property as a mortgagee, having bought a part of the debt secured by the mortgage, or was the actual owner of the property, subject only to the amount owing thereon to Childers Motor Company. So that, in either event, he was vitally interested in having this Childers mortgage paid, and if it had been fully paid, he would have had the option to take down the amount due him and surrender the property to the plaintiff, or he could have fought out the issue with the plaintiff as to whether or not the plaintiff had a right to subject the property to the payment of its debt.

We have carefully examined the testimony with reference to the purchase and transfer of possession of this car, and we are convinced that reasonable men might come to different conclusions on the question of fact involved as to whether or not there was sufficient change of possession at the time of the purchase as would have protected the purchaser, bearing in mind that the purchaser went into immediate possession of the property and drove in the same to Florida, remained there six or eight weeks using the truck in hauling material, taking the proceeds thereof, and later returned to Oklahoma, and was never out of the actual possession of the truck, except during the one or two nights that he caused the same to be housed in the garage of Golden, which was within three or four blocks of his home.

But it is not necessary for us to set out here the evidence disclosing such change of possession, for it seems to us that the court below was clearly right in his ruling upon the whole case. It is the appellant's burden to point out some substantial error, and to show that he has been prejudiced thereby, and in this case we fail to find any such. The court held that at the time of the levy Smyers was either the owner or had a mortgage past due on this truck, and that Childers Motor Company had a mortgage thereon, and that no amount had been paid or tendered thereon, and, on that account, it was held that the execution should have been released. The court did not say in his judgment which view he adopted, and in our view it is immaterial, for the levy was without authority and the judgment of the court below in discharging the levy was proper, and the same is in all respects affirmed.

DIFFENDAFFER, HERR, JEFFREY. and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note—See under (1) 23 C. J. p. 346, §90; 10 R. C. L. p. 1278. (2) 11 C. J. p. 399; §1; p. 665, §417; 5 R. C. L. p. 442. (3) 23 C. J. p. 346, §90.