**W. P. MURRELL, Plaintiff in Error,**

v.

**John I. GRISWOLD, Defendant in Error.**

No. 38262.

Supreme Court of Oklahoma.

April 14, 1959.

Person E. Woodall, Norman, for plaintiff in error.

Homer Cowan, Norman, John I. Griswold, pro se, Seminole, for defendant in error.

BERRY, Justice.

The parties occupy the same relative position here that they occupied in the trial court. Plaintiff-in-error, W. P. Murrell, will therefore be referred to herein as "plaintiff" and defendant-in-error, John I. Griswold, will be referred to as "defendant".

In March, 1954, plaintiff sold defendant a retail beer business at Norman, Oklahoma, which business was operated under the name "Anchor Tap Room". In referring to said business herein we will use said name. The consideration that defendant agreed to pay for Anchor Tap Room was either $5,300 or $6,123.05. The defendant contends that the first-mentioned figure was the agreed consideration for the business including an inventory of $823.05, and plaintiff contends that the last-mentioned figure was the agreed consideration—that it was agreed that defendant would pay $5,300 for the business and $823.-05 for the inventory. A resolving of this disputed question of fact is not, in fact, necessary in order to reach a decision herein. Defendant gave plaintiff his check for $500 and check and cash aggregating $823.-05. On April 1, 1954, defendant executed and delivered to plaintiff his promissory note for $4,800 and a chattel mortgage on the tangible personal property then used in Anchor Tap Room. The note, which did not bear interest, was payable in $100 monthly installments beginning May 1, 1954. Anchor Tap Room was housed in a building owned by a third person. Defendant agreed to pay rent on said building, which rent was $100 per month. The sale was evidenced by a written agreement under date of April 1, 1954. The agreement is ambiguous on the disputed question of fact above referred to.

In May, 1955, plaintiff sold and assigned with recourse the referred-to note and mortgage to one of the banks in Norman, which bank is hereafter referred to as "bank". The bank notified defendant that it had acquired the note and thereafter until August, 1955, defendant paid the monthly install-

ments to bank. Prior to being so notified by bank, defendant had paid the monthly rental to plaintiff who in turn had remitted the rent to the owner of the building in which Anchor Tap Room was housed. Thereafter defendant paid the rent direct to the owner of the building. Unless the $823.05 is considered as an advance payment of monthly installments on the note and rent on the building, defendant failed to timely pay the installment payment due in August, 1955 and the rent due in said month.

In July, 1955, defendant's license to sell beer at Anchor Tap Room was cancelled. Upon the license being cancelled, defendant locked the doors to Anchor Tap Room and went on a vacation that extended over several weeks.

In July, 1955, plaintiff also went on a vacation. Upon his return to Norman in August he learned that the doors to Anchor Tap Room had been locked, and shortly thereafter also learned that the installment payment, which bank claimed was due in August had not been paid to the bank and that the rent due in August had not been paid. After learning of said things, plaintiff, assisted by a local locksmith, forced open the front door of Anchor Tap Room and thus gained entrance to and possession of said business. Plaintiff subsequently undertook to foreclose the mortgage that he had assigned to the bank and which the bank then held, which action was taken without the knowledge or consent of bank. In attempting to foreclose the mortgage, plaintiff posted notices at three public places of the time (August 30, 1955) and place (front steps of the local Courthouse) of sale of the chattels covered by the mortgage and mailed defendant a copy of the notice of sale by certified mail. At the time of the sale the chattels covered by the mortgage were in Anchor Tap Room, which place of business was then locked. At the appointed time and place, plaintiff bid in the chattels for $500. He subsequently either sold Anchor Tap Room to a third person or leased it to him.

On September 7, 1955, plaintiff filed this action. In his petition he alleged the execution and delivery of the note and mortgage of April 1, 1954; that the note was sold to bank; that defendant made default; that under the mortgage plaintiff sold the chattels covered thereby for $500; that the proceeds of the sale were applied on the note leaving a balance due of $2,700 plus interest, for which plaintiff sought judgment.

On December 24, 1955, defendant filed an answer and cross-petition to plaintiff's petition. In his cross-petition he sought damages against plaintiff in the amount of $8,400 which he alleged resulted from "false, malicious and untrue statements about him" that directly led to his beer license covering the Anchor Tap Room business being cancelled.

In May, 1956, plaintiff and defendant reached an agreement to the effect that if defendant would deed to plaintiff an undivided 9/16ths of defendant's royalty interest in certain minerals, plaintiff would pay bank the balance due on the note of April 1, 1954; that the tangible personal property then upon the Anchor Tap Room premises would be returned to defendant; that the note would be considered paid and that plaintiff would dismiss this action. The following notation was made at the bottom of the contract to purchase Anchor Tap Room:

"Exhibit A

"Norman, Oklahoma
"May 24th, 1956.

"I, W. P. (Bill) Murrell, party of the first part, of the contract above set forth and therein named, having received full and complete payment of the above contract and the note and mortgage, therein stated, for a good and valuable consideration in hand paid me this day, by John Griswold do hereby release all my rights, claims and title to the property as set out in said contract, and hereby transfer all my rights, claims or titles to said John Griswold, and do hereby dismiss my action against him now pending in the

district court of Cleveland County, with prejudice to an further action therein by me against the said John Griswold.

"/s/ W. P. Murrell
"Party of the first part

"Subscribed and sworn to before me this 24th day of May, 1956.

"/s/ H. O. McSpadden
"Notary Public

"(Seal)
"My commission expires the 16th day of March, 1957."

Plaintiff testified that defendant agreed to dismiss the cross-petition filed herein. Defendant denied that he had so agreed.

On February 23, 1957, defendant filed an amended answer and cross-petition. In his amended cross-petition he alleged in substance that plaintiff wrongfully took possession of the tangible personal property located in Anchor Tap Room in August, 1955, a portion of which was covered by the mortgage of April 1, 1954, and a portion of which was not covered by said mortgage; that plaintiff converted said property to defendant's damage in the amount of $5,-482.13. Defendant, in a separate cause of action, sought exemplary or punitive damages in the amount of $2,500.

This case was tried to a jury. The court instructed the jury that as a matter of law plaintiff was guilty of converting the tangible property in Anchor Tap Room; that if defendant had agreed to settle the claim that he was asserting against plaintiff that defendant was not entitled to recover; that if they found otherwise, they should fix and determine defendant's damage. The only complaint that plaintiff makes of the court's instructions is the instruction advising the jury that as a matter of law plaintiff was guilty of conversion.

The jury returned a verdict in favor of defendant fixing his recovery at $2,000 actual damages and $300 punitive damages. Judgment was entered in accordance with the verdict. Plaintiff filed a motion for new trial and from judgment denying said motion, perfected this appeal.

We are of the opinion that the trial court correctly instructed the jury that plaintiff, as a matter of law, was guilty of converting the tangible personal property located in Anchor Tap Room at the time he took possession of said property without the knowledge or consent of defendant.

In Sisler v. Smith, Okl., 267 P.2d 1081, it is pointed out that the "mere illegal taking or wrongful assuming of right to personal property constitutes conversion and that no further step is necessary to perfect the right of action therefor, First National Bank of Pocasset v. Melton & Holmes, 156 Okl. 63, 9 P.2d 703; and the fact that owner was indebted to wrongdoer is no defense, Caldwell v. Carpenter, 109 Okl. 63, 234 P. 767."

At the time plaintiff took possession of the tangible property located in Anchor Tap Room, defendant was indebted to the bank and not to plaintiff, and the bank and not plaintiff owned the mortgage given to secure the note when plaintiff had endorsed with recourse to the bank. In Beatrice Creamery Co. v. Golden, 129 Okl. 86, 263 P. 458, we held that a chattel mortgage is a mere incident of the debt which it secures, and an assignment of the debt carries with it a pro tanto interest in the mortgage.

The plaintiff does not, in fact, claim that in attempting to foreclose the mortgage in controversy he complied with the statutes governing such matters and to the contrary argues that in any event under the terms of the mortgage plaintiff was entitled to take possession of the property covered by the mortgage. In making such argument plaintiff assumes that he did not assign the mortgage to the bank, and that the provisions of the mortgage gave him the right to proceed as he did. As pointed out, the bank and not plaintiff owned the mortgage at the time plaintiff took possession of the property located in Anchor Tap Room. Moreover it was provided in the mortgage that the mortgagee should have "the right to take immediate possession of the same and to *foreclose this mortgage.*"

The foregoing provision of the mortgage is in keeping with the well-established rule in this jurisdiction that a chattel mortgage does not serve to transfer title to the chattels covered thereby and only creates a lien on the chattels. First State Bank of Lamont v. Ware, 71 Okl. 1, 174 P. 273. It is also settled law in the jurisdiction that a mortgagee may not by force, threats, violence or stealth and without the consent of the mortgagor take possession of chattels covered by the chattel mortgage. In the third paragraph of the syllabus of Wilson Motor Co. v. Dunn, 129 Okl. 211, 264 P. 194, 57 A.L.R. 17, this was said:

"Although a chattel mortgage provides that the mortgagee under certain conditions may take possession of the mortgaged property, yet neither the mortgagee, its assignee, nor their agents has the right to take possession of the property by force, threats, violence, or stealth, and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace and then to justify the conduct by a trial of the rights of property."

The matter of whether plaintiff and defendant, in May, 1956, adjusted and compromised all claims and demands that they may have had or held against each other that were connected with or which arose out of the sale and purchase of Anchor Tap Room presented a sharply-disputed question of fact which was properly submitted to the jury, and the jury's verdict which represents a general finding in favor of defendant on said issue must stand since it is supported by competent evidence. There was competent evidence sustaining the jury's award of actual damages in the amount of $2,000, and for said reason this portion of the verdict must stand. Gilbaugh v. Rose, 205 Okl. 508, 239 P.2d 406, There was also competent evidence tending to show that in converting defendant's property plaintiff was guilty of "fraud, malice or oppression", and for said reason the jury's award of exemplary damages in the amount of $300 is sustained by competent evidence and this portion of the jury's verdict must also stand. Gilbaugh v. Rose, supra, and Belcher v. Spohn, 170 Okl. 139, 39 P.2d 87.

Upon consideration of the motion of defendant for judgment on the supersedeas bond filed by plaintiff herein, judgment is hereby rendered against the sureties on said bond in the amount of the judgment appealed from. The aforesaid judgment shall be entered and enforced by the trial court as if made and entered by said court. Ivey v. Stewart, Okl. 295 P.2d 1056, 1058.

The verdict of the jury and judgment thereon is not contrary to the evidence or law, and for said reason the judgment of the trial court is affirmed.

DAVISON, C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.